United States Court of Appeals,

Fifth Circuit.

No. 91–1123.

PENNSYLVANIA NATIONAL MUTUAL CASUALTY INSURANCE CO.,
Plaintiff–Appellant, Cross–Appellee,

v.

KITTY HAWK AIRWAYS, INC., and Jeffrey Thomason Pollard, Defendants–Appellees,
Cross–Appellants.

June 30, 1992.

Appeals from the United States District Court for the Northern District of Texas.

Before DAVIS, JONES, and EMILIO M. GARZA, Circuit Judges.

PER CURIAM:

Insurer Pennsylvania National Mutual Casualty Insurance Co. ("Pennsylvania National")
appeals a grant of summary judgment in favor of its insured—Kitty Hawk Airways, Inc. ("Kitty
Hawk")—and Kitty Hawk's former employee, Jeffrey Thomason Pollard. The district court granted
Kitty Hawk's motion for summary judgment on the grounds that Pennsylvania National is estopped
from raising a defense of non-coverage by its assumption and continuation of Kitty Hawk's defense
for more than one year before raising a reservation of its rights. Finding that the doctrines of estoppel
and waiver do not apply, we reverse the portion of the district court's judgment holding that
Pennsylvania National is estopped from denying coverage and render judgment in favor of
Pennsylvania National on its non-coverage claim.

I

Kitty Hawk is the named insured of a policy issued by Pennsylvania National providing
personal injury liability coverage—including coverage for any liability resulting from defamatory
statements made in the course of Kitty Hawk's business.[1] However, "Exclusion (c)" of that policy

---

[1] Specifically, the policy provides that:

The company will pay on behalf of the **insured** all sums which the **insured**

explicitly excludes "personal injury sustained by any person as a result of an offense directly or indirectly related to the employment of such person by the named insured...." *Id.* (emphasis in original).

Pursuant to this policy, Pennsylvania National retained attorneys to provide Kitty Hawk and F. Ken Dunn—the vice-president and co-owner of Kitty Hawk—with an unqualified defense in a Texas defamation lawsuit brought by Pollard in May 1984.[2] In July 1985—a month after Pollard amended his suit to assert that Kitty Hawk's defamatory statements related to Pollard's severance from employment—Pennsylvania National sent Kitty Hawk a reservation of rights letter explaining that Exclusion (c) might bar coverage.

In February 1987, Kitty Hawk's general counsel demanded that Pennsylvania National provide an unqualified defense, but Pennsylvania National refused to withdraw its reservation. A few months later, Kitty Hawk again made a demand for an unqualified defense but noted that the defense provided

---

shall become legally obligated to pay as **damages** because of injury (herein called **"personal injury"**) sustained by any person or organization and arising out of one or more of the following offenses committed in the conduct of the **named insured's** business:

Group B—the publication or utterance of a libel or slander or of other defamatory or disparaging material, or a publication or utterance in violation of an individual's right of privacy, except publications or utterances in the course of or related to advertising, broadcasting or telecasting activities conducted by or on behalf of the **named insured....**

Record Excerpts of Appellee Kitty Hawk Airways, Inc. at tab 1, p. 055, *Pennsylvania Nat'l Mutual Casualty Ins. Co. v. Kitty Hawk Airways, Inc. and Jeffrey Thomason Pollard,* No. 91–1123 (5th Cir. filed Aug. 14, 1991) (emphasis in original).

[2]Pollard was employed by Northwest Airlines in December of 1983, and Northwest terminated that employment in January or February of 1984—soon after receiving Kitty Hawk's response to a routine employment inquiry. Pollard's suit alleged that Kitty Hawk and Dunn published libelous and slanderous statements about Pollard, which resulted in his being terminated by Northwest. Specifically, Kitty Hawk stated in its response that Pollard—an employee of Kitty Hawk from February through June of 1979—was admonished in April 1979 for drinking alcohol at a time when he was supposed to be available for flight duty. This incident was documented in an April 24, 1979 warning letter from the president of Kitty Hawk to Pollard.

by Pennsylvania National had been "able and competent."[3]  Pennsylvania National rejected this demand and continued Kitty Hawk's defense subject to its reservation.

In October 1987, a jury found that Kitty Hawk had defamed Pollard.  Pennsylvania National refused to satisfy the judgment and filed this action in federal court, seeking a declaration that it was not obligated to provide coverage under the policy.  Kitty Hawk and Pollard filed counterclaims, seeking a declaration that Pennsylvania National owed coverage and asserting claims under the Texas Insurance Code.

All three parties filed motions for summary judgment.  The district court held that Exclusion (c) is unambiguous and that Pollard's claim falls within that exclusion.  The district court concluded, however, that Pennsylvania National is estopped from denying coverage because its year delay in conveying a reservation prejudiced Kitty Hawk.  The court also found that, under Texas law, Pollard's damages are limited to the amount of his policy—that is, Pollard cannot recover the double damages he seeks pursuant to section 16 of article 21.21 of the Texas Insurance Code.

## II

Based upon the plain language of the Pennsylvania National–Kitty Hawk policy, we agree with the district court—Exclusion (c) is unambiguous and Pollard's claim falls within this exclusion.[4] Therefore, we focus on Kitty Hawk's contention that Pennsylvania National is precluded from raising the defense of non-coverage by the doctrine of estoppel.[5]

---

[3]*See infra* note 17 and accompanying text.

[4]*See Pennsylvania Nat'l Mutual Casualty Ins. Co. v. Kitty Hawk Airways, Inc. and Jeffrey Thomason Pollard,* No. CA 3–87–3033–R, slip op. at 3–5 (N.D.Tex.1990) (Memorandum Opinion and Order).

[5]The doctrines of waiver and estoppel, although used somewhat interchangeably by the district court, are distinct and separate doctrines:  waiver requires the voluntary surrender of a known right (for example, if the insurer knows that it can raise a non-coverage defense but chooses not to), while estoppel requires a showing that the insured was prejudiced by the insurer's conduct. *See State Farm Lloyds, Inc. v. Williams,* 791 S.W.2d 542, 552 (Tex.App.—Dallas 1990, no writ);

We are a federal court applying Texas law,[6] and it is well-settled Texas law that "the doctrines of waiver and estoppel cannot be used to create insurance coverage where none exists under the terms of the policy."[7] *Williams,* 791 S.W.2d at 550;[8] *Yancey v. Floyd West & Co.,* 755 S.W.2d 914, 922 (Tex.App.—Fort Worth 1988, no writ) (applying this general rule to hold that doctrine of estoppel did not entitle insurance agent claiming that he was prejudiced by reliance on insurer's statements to liability coverage). However, there is a well-established exception—the "*Wilkinson* exception"[9]—to this general rule: "[I]f an insurer assumes an insured's defense without declaring a reservation of rights or obtaining a non-waiver agreement, and with knowledge of facts indicating non-coverage, all policy defenses, *including those of non-coverage,* are waived, or the insurer may be estopped from raising them." *Williams,* 791 S.W.2d at 550 (emphasis in original), *citing Wilkinson,* 601 S.W.2d at 520.[10] Our inquiry as to whether the *Wilkinson* exception applies

---

*see also Union Nat'l Bank of Little Rock v. Moriarity,* 746 S.W.2d 249, 252 n. 3 (Tex.App.—Texarkana 1987, no writ). We use the term "estoppel" in our discussion since Kitty Hawk's primary claim is that it relied on Pennsylvania National for its defense against Pollard's suit and was prejudiced by a conflict of interest. However, see *infra* note 11.

[6]This case is a diversity action brought pursuant to 28 U.S.C. § 1332. *See Salve Regina College v. Russell,* —— U.S. ——, 111 S.Ct. 1217, 1221, 113 L.Ed.2d 190 (1991) (Where plaintiff filed diversity action, concluding "that a court of appeals should review de novo a district court's determination of state law.") (italics omitted).

[7]One of the policy girders buttressing this rule is the potential for conflicts—that is, the potential for an insurer representing an insured in a lawsuit to, fearful that the defense it provides may fail and result in a judgment against the insured and indemnity claim against the insurer, simultaneously prepare a non-coverage defense against the insured. *See Williams,* 791 S.W.2d at 551. "Another related reason is the harm potentially or inherently suffered by an insured who lacks the right to completely control his defense." *Id.* at 552.

[8]*Citing Texas Farmers Ins. Co. v. McGuire,* 744 S.W.2d 601, 602–03 (Tex.1988); *Republic Ins. Co. v. Silverton Elevators, Inc.,* 493 S.W.2d 748, 751 (Tex.1973); *Minnesota Mut. Life Ins. Co. v. Morse,* 487 S.W.2d 317, 320 (Tex.1972); Annotation, *Doctrine of Estoppel or Waiver as Available to Bring Within Coverage of Insurance Policy Risks Not Covered by Its Terms or Expressly Excluded Therefrom,* 1 A.L.R.3d 1139, 1144–50 (1965); 3 R. LONG & M. RHODES, THE LAW OF LIABILITY INSURANCE § 17.16, at 17–59, 17–65 (1988).

[9]*See Farmers Texas County Mut. Ins. Co. v. Wilkinson,* 601 S.W.2d 520, 522 (Tex.Civ.App.—Austin 1980, writ ref'd n.r.e.)

[10]*Also citing Pacific Indem. Co. v. Acel Delivery Serv., Inc.,* 485 F.2d 1169, 1173 (5th Cir.1973) (applying Texas law), *cert. denied,* 415 U.S. 921, 94 S.Ct. 1422, 39 L.Ed.2d 476 (1974); Annotation, *Liability Insurance: Insurer's Assumption of or Continuation in Defense of Action Brought Against the Insured as Waiver or Estoppel as Regards Defense of Non-coverage*

is guided by recent Texas cases holding that this exception trumps the general no-expanded-coverage rule where an insured shows: (1) that the insurer had sufficient knowledge of the facts or circumstances indicating non-coverage but (2) assumed or continued to defend its insured without obtaining an effective reservation of rights or non-waiver agreement and, as a result, (3) the insured suffered some type of harm.[11] *See Texas Farmers Ins. Co. v. McGuire,* 744 S.W.2d 601, 603 n. 1 (Tex.1988);[12] *Williams,* 791 S.W.2d at 552–53 (drawing deductions from survey of relevant Texas case law).

We find that Pennsylvania National, the drafter of Exception (c), had sufficient knowledge to challenge its coverage of Kitty Hawk but assumed and continued Kitty Hawk's defense for more than a year before obtaining an effective reservation of rights—thereby satisfying the first two requirements for applying the *Wilkinson* exception.[13] That leads us to the third requirement—that

*or Other Defense Existing at Time of Accident,* 38 A.L.R.2d 1148, 1150–55 (1954); 7C J. APPLEMAN & W. BERDAL, INSURANCE LAW AND PRACTICE § 4692, at 289–95 (1979); 3 R. LONG & M. RHODES, THE LAW OF LIABILITY INSURANCE § 17.16, at 17–67 (1988); A. WINDT, INSURANCE CLAIMS AND DISPUTES § 2.06, at 32–33 (1988).

[11]Regardless of whether the insured relies upon the doctrine of estoppel or the doctrine of waiver to challenge the non-coverage defense of its insurer, courts generally require a showing that the insurer's assumption of its insured's defense without reserving its rights harmed the insured. *Williams,* 791 S.W.2d at 552 (citations omitted).

[12]Specifically, the Texas Supreme Court, summarizing the Texas Court of Appeals holding in *Farmers Texas County Mutual Ins. Co. v. Wilkinson,* 601 S.W.2d 520 (Tex.Civ.App.—Austin 1980, writ ref'd n.r.e.), noted that: "If an insurer, with knowledge of facts indicating non-coverage, assumes or continues the defense of its insured without obtaining a non-waiver agreement or a reservation of rights, it waives all policy defenses, including those of non-coverage, or it may be estopped from raising them." *McGuire,* 744 S.W.2d at 603 n. 1.

[13]Pennsylvania National argues that it could not have notified Kitty Hawk any earlier because it was unaware of its non-coverage defense until Pollard amended his suit in June 1985 to assert that Kitty Hawk's defamatory statements involved Pollard's severance from employment. As the district court found, however, even Pollard's original Texas state court petition contained facts sufficient to predicate this defense: The original petition stated that Kitty Hawk employed Pollard from February through June 1979, that the Kitty Hawk letter forming the basis for Pollard's claim was dated April 24, 1979, and that Kitty Hawk had defamed Pollard in this letter. At the very least, this information was sufficient to require Pennsylvania National to investigate the facts thoroughly enough to make an informed decision about coverage. *See Pacific Indem. Co. v. Acel Delivery Serv., Inc.,* 485 F.2d 1169, 1174 (5th Cir.1973), *cert. denied,* 415 U.S. 921, 94 S.Ct. 1422, 39 L.Ed.2d 476 (1974).

is, determining whether Pennsylvania National's delay in reserving its rights harmed Kitty Hawk. Specifically, we must determine what constitutes a sufficient showing of harm and apply that standard to the case before us.

*Williams* provides the most recent expression of what constitutes sufficient proof of harm under the *Wilkinson* exception. In *Williams,* State Farm provided a defense for the insured's estate in the underlying suit without reserving its right to assert non-coverage in the future. State Farm then denied coverage and refused to respond to the judgment rendered against the property of the insured's estate. Although State Farm's policy did not cover the estate's liability, the court remanded the case for further proceedings to determine if State Farm had waived its right to deny, or should be estopped from denying, coverage. Addressing the third prong of the *Wilkinson* exception, the court held that, unless the insured suffers a "clear and unmistakable" harm from its insurer's defense, "the insured must show how he was harmed." *Williams,* 791 S.W.2d at 553. Because the record contained scant information on the conduct and quality of State Farm's defense of the estate, the court concluded that it could not presume that State Farm's defense had harmed the estate.

The intermediate Texas courts have not unanimously adopted the *Williams* test for harm.[14] We are nevertheless persuaded that the Texas Supreme Court would adopt this test at least in cases where counsel provided to the insured by its insurer has no opportunity to manipulate facts relating to the insurer's non-coverage defense. In this limited circumstance, our decision in *Pacific Indemnity*[15] does not control.

Our review of the record convinces us that the facts of this case do not support a conclusion that Pennsylvania National's defense of Kitty Hawk resulted in a "clear and unmistakable" conflict of

---

[14]*See, e.g., Wilkinson,* 601 S.W.2d at 521–22; *Automobile Underwriters' Ins. Co. v. Murrah,* 40 S.W.2d 233, 235 (Tex.Civ.App.—Dallas 1931, writ ref'd).

[15]*Pacific Indem. Co. v. Acel Delivery Serv., Inc.,* 485 F.2d 1169 (5th Cir.1973), *cert. denied,* 415 U.S. 921, 94 S.Ct. 1422, 39 L.Ed.2d 476 (1974).

interest or harm, or that Kitty Hawk has demonstrated that it suffered actual harm or prejudice. Kitty Hawk has produced no evidence that the attorneys provided by Pennsylvania National acted in any manner, during the course of the defense, that was prejudicial to Kitty Hawk. Kitty Hawk points to no evidence that Pennsylvania National in its defense of Kitty Hawk manipulated the defense of its insured to better its future claim of non-coverage. Indeed, Pennsylvania National does not base its non-coverage defense on an issue that was material to the underlying suit: Exclusion (c), on which Pennsylvania National premises its non-coverage defense, withdraws coverage for defamatory statements that relate directly or indirectly to the employment of the defamed person, and this issue of employment relatedness was not contested in the underlying suit. In fact, the defamatory letter specifically refers to Pollard's employment-related conduct. Kitty Hawk points to no evidence reflecting that Pennsylvania Mutual had an opportunity to manipulate the facts on this point to bolster its non-coverage defense.[16]

In addition, Kitty Hawk had over two years to retain new counsel after Pennsylvania National notified Kitty Hawk that Exclusion (c) might bar coverage. Nevertheless, Kitty Hawk chose to continue on with Pennsylvania National's representation. In fact, in a letter demanding that Pennsylvania National provide an unqualified defense, Kitty Hawk admitted that it did not "have any complaints whatsoever with the able and competent manner in which the defense ha[d] been handled to date."[17] Therefore, the fact that Kitty Hawk may have voluntarily relinquished rights associated with the control of its defense does not establish that it suffered any harm. Accordingly, we hold that,

---

[16]*Compare Pacific Indemnity,* 485 F.2d at 1175–76 (recognizing prejudice when insurer's defense deprived its insured of an opportunity to investigate the facts while in close proximity to their occurrence and to conduct timely discovery and the insurer's failure to answer interrogatories adequately resulted in sanctions against the insured) *and Employers Casualty Co. v. Tilley,* 496 S.W.2d 552, 560–61 (Tex.1973) (holding conflict of interest created when attorney, acting on behalf of the insurer in defending claim against an insured, simultaneously prepared a defense against the insured for the insurer) *with Ideal Mut. Ins. Co. v. Myers,* 789 F.2d 1196, 1202 (5th Cir.1986) (no conflict of interest arose where insurer provided a reservation of rights notice and attorney did not work against the insured on the conflicting coverage question).

[17]Second Supplemental Record on Appeal, vol. II, at 289–99, *Pennsylvania Nat'l Mutual Casualty Ins. Co. v. Kitty Hawk Airways, Inc., and Jeffrey Pollard,* No. 91–1123 (5th Cir. filed Aug. 26, 1991).

when, as in this case, the facts *do not suggest* that counsel provided by an insurer to defend its insured has acted to prejudice (or even had an opportunity to prejudice) the insured's claim of policy coverage, no inference of harm to the insured arises.[18]

## III

For the foregoing reasons, we REVERSE that portion of the district court's judgment holding that Pennsylvania National is estopped from denying coverage and RENDER judgment in favor of Pennsylvania National on its non-coverage claim.

\* \* \* \* \* \*

---

[18]Our holding that Pennsylvania National's non-coverage defense bars damages arising from Kitty Hawk's defamation of Pollard makes it unnecessary for us to address whether Pollard may recover double damages from Pennsylvania National pursuant to section 16 of article 21.21 of the Texas Insurance Code.