**David Arthur KATERNDAHL and Debra Ann Henderson, Appellants,**

v.

**STATE FARM FIRE AND CASUALTY CO. and State Farm Lloyds, in their Corporate Capacities and d/b/a State Farm Insurance Companies, Appellees.**

No. 04–96–00540–CV.

Court of Appeals of Texas, San Antonio.

Nov. 12, 1997.

Rehearing Overruled Feb. 13, 1998.

Dan Pozza, Pozza & Patton, San Antonio, for appellants.

Lori M. Cliffe, David V. Jones, Jones, Kurth & Andrews, P.C., San Antonio, for appellees.

Before HARDBERGER, C.J., and LÓPEZ and ANGELINI, JJ.

## OPINION

ANGELINI, Justice.

David Katerndahl and Debra Henderson appeal the granting of summary judgment in favor of State Farm in their suit against State Farm for breach of contract. In sixteen points of error, the Katerndahls[1] contend that the trial court erred in denying their motion for summary judgment and in granting State Farm's motion for summary judgment. Specifically, the Katerndahls contend that State Farm had a duty to defend Dr. Katerndahl in Mrs. Katerndahl's negligence suit against him, and that State Farm waived its initial reservation of rights. We affirm the judgment of the trial court.

### FACTUAL AND PROCEDURAL BACKGROUND

This case began in 1991, when Dr. Katerndahl sued Mrs. Katerndahl for divorce. During the course of divorce proceedings, Mrs. Katerndahl brought counterclaims against Dr. Katerndahl, a physician, for his actions in prescribing her addictive medications and causing her emotional distress. Dr. Katerndahl, on the advice of his attorney, sought a defense by filing a claim under his home owner's insurance policy with State Farm. State Farm defended Dr. Katerndahl under a reservation of rights. However, during mediation of the matter, State Farm notified Dr. Katerndahl that it was withdrawing the defense because it had determined that the tortious actions alleged by Mrs. Katerndahl did not qualify for a defense under the coverage terms of the home owner's policies at issue.[2]

The Katerndahls then entered into an agreement whereby the divorce and medical malpractice issues were severed from Mrs. Katerndahl's tort allegations. The Katerndahls settled the divorce and medical malpractice issues and then agreed to the entry of a judgment in the amount of $1,800,000.00 against Dr. Katerndahl in satisfaction of Mrs. Katerndahl's tort claims. The agreement between Dr. and Mrs. Katerndahl included a

---

**1.** While we understand that David Katerndahl and the former Debra Katerndahl are divorced, we will, for the sake of brevity, refer to them in this opinion as "Dr. Katerndahl," "Mrs. Katerndahl," and "the Katerndahls."

**2.** As a result of Mrs. Katerndahl's allegations, six home owner's policies were at issue, ranging in dates from 1985 to 1990. The relevant portions of each policy are identical.

covenant, signed by Mrs. Katerndahl, not to execute on the $1,800,000.00 judgment in exchange for the assignation of Dr. Katerndahl's rights against State Farm to Mrs. Katerndahl. The Katerndahls then sued State Farm for breaching its duty to defend Dr. Katerndahl against Mrs. Katerndahl's tort allegations. Both State Farm and the Katerndahls filed motions for summary judgment. The trial court granted, in part, State Farm's motion and denied the Katerndahls' motion. All extracontractual causes of action, statutory causes of action, and causes of action other than the breach of contract issue had previously been severed, making the trial court's order on the motions for summary judgment final and appealable.[3]

## ARGUMENTS AND AUTHORITIES

In fifteen of sixteen points of error, the Katerndahls contend that the trial court erred in denying their motion for summary judgment and in granting State Farm's motion for summary judgment because State Farm breached its duty to defend. The Katerndahls argue that this duty arose both under the terms of the contract and because State Farm waived its initial reservation of rights when State Farm agent, Kathy Fite, informed Dr. Katerndahl that State Farm would defend him to a verdict.

■ "When an insurer is faced with the dilemma of whether to defend or refuse to defend a proffered claim, it has four options: (1) completely decline to assume the insured's defense; (2) seek a declaratory judgment as to its obligations and rights; (3) defend under a reservation of rights or a non-waiver agreement; and (4) assume the insured's unqualified defense." *Farmers Texas County Mut. Ins. Co. v. Wilkinson,* 601 S.W.2d 520, 522 (Tex.Civ.App.—Austin 1980, writ ref'd n.r.e.). Once a defense is taken under a valid reservation of rights, the insurer may withdraw the defense when it becomes clear that there is no coverage under the applicable policy. *American Eagle Ins. Co. v. Nettleton,* 932 S.W.2d 169, 174 (Tex.App.—El Paso 1996, writ denied). The purpose of the reservation of rights letter is to permit the insurer to provide a defense for its insured while it investigates questionable coverage issues. *J.E.M. v. Fidelity & Casualty Co.,* 928 S.W.2d 668, 673 (Tex.App.—Houston [1st Dist.] 1996, no writ).

■ In this case, it is undisputed that State Farm provided Dr. Katerndahl a defense under a reservation of rights. Specifically, State Farm informed Dr. Katerndahl, in writing, that it would provide him a defense against his wife's claims, but that it specifically reserved its right to deny coverage following further investigation of several questions regarding the case. Those questions included whether the claimed bodily injury was an intentional act on the part of Dr. Katerndahl and whether the claimed bodily injury arose out of Dr. Katerndahl's rendering of a professional service or as a result of his business pursuits. State Farm contends that it ultimately withdrew its defense, as permitted by its reservation of rights letter, because it had determined that the allegations against Dr. Katerndahl were excluded from coverage by the professional services, business pursuits and/or intentional injury exclusions of the State Farm policy.

■ If a plaintiff's petition does not allege facts within the scope of policy coverage, an insurer has no legal obligation to defend the insured against the plaintiff's claims. *Nat'l Union Fire Ins. Co. v. Merchants Fast Motor Lines, Inc.,* 939 S.W.2d 139, 141 (Tex. 1997); *American Physicians Ins. Exch. v. Garcia,* 876 S.W.2d 842, 848 (Tex.1994); *Fidelity & Guar. Ins. Underwriters, Inc. v. McManus,* 633 S.W.2d 787, 788 (Tex.1982).

---

3. In their final point of error, the Katerndahls contend that the trial court erred in granting State Farm's motion for summary judgment on the alleged extracontractual issues because those causes of action had been severed from this cause and were not before the trial court at the time summary judgment was rendered. Because the extracontractual causes of action had in fact been severed, they were not before the trial court for consideration. Therefore, the trial court's judgment did not dispose of them as the Katerndahls allege. The fact that State Farm's motion requested relief for extracontractual causes of action is immaterial because those causes of action were not effectively a part of the live pleadings before the court at the time the motion was considered. The trial court could not and did not dispose of causes of action that were not before it. Appellant's sixteenth point of error is overruled.

In order to determine whether the insurer has a duty to defend, only the facts alleged in the pleadings of the underlying lawsuit and the language of the insurance policy at issue will be considered. *Nat'l Union*, 939 S.W.2d at 141; *Heyden Newport Chem. Corp. v. Southern Gen. Ins. Co.*, 387 S.W.2d 22, 24–25 (Tex.1965). We do not consider the veracity of the allegations in the underlying pleadings, read facts into the pleadings, or look outside the pleadings to determine if facts within coverage could have been pled. *Nat'l Union*, 939 S.W.2d at 142; *Heyden Newport*, 387 S.W.2d at 24. Instead, our review is strictly confined to the four corners of the underlying complaint and the four corners of the insurance contract.

■ The application of this "eight corners" rule requires that we focus on facts pled rather than on legal theories. *Terra Int'l, Inc. v. Commonweatlh Lloyd's Ins. Co.*, 829 S.W.2d 270, 272 (Tex.App.—Dallas 1992, writ denied). "It is not the cause of action alleged that determines coverage but the facts giving rise to the alleged actionable conduct." *Adamo v. State Farm Lloyds Co.*, 853 S.W.2d 673, 676 (Tex.App.—Houston [14th Dist.] 1993, writ denied), *cert. denied*, 511 U.S. 1053, 114 S.Ct. 1613, 128 L.Ed.2d 340 (1994). While we construe the allegations in the petition liberally, if the petition alleges only facts that are not covered by the policy, the insurer is not required to defend. *Nat'l Union*, 939 S.W.2d at 141; *McManus*, 633 S.W.2d at 788.

■ In this case, Mrs. Katerndahl's claims against Dr. Katerndahl all pertain to either intentional acts of cruelty or actions taken by Dr. Katerndahl in his role as a physician. Mrs. Katerndahl's pleadings begin with a running account of several instances of emotional and verbal abuse inflicted upon her by Dr. Katerndahl, including numerous accusations, slanderous comments, personal insults, insults directed toward her family members, and other generally hateful language and actions. All of the instances alleged involve intentional and purposeful conduct. Even given a liberal interpretation, these facts cannot be construed to support a claim for anything other than a cause of action based upon intentional conduct.

Mrs. Katerndahl's pleading continues by giving a running account of Dr. Katerndahl's actions in prescribing her addictive medications, withdrawing the medications, and hypnotizing her "in the course of rendering professional medical and health care services as a medical doctor." These claims are clearly excluded from coverage under the business pursuits and professional service provisions of the policy. The Katerndahls rely on deposition testimony given by Dr. Katerndahl in asserting that he was not acting as a physician when he performed the acts alleged in Mrs. Katerndahl's petition. As discussed above, however, the eight corners rule prohibits us from looking to anything outside of the facts alleged in the pleadings in determining whether there is a duty to defend under the insurance policy. *Nat'l Union*, 939 S.W.2d at 142.

In order to support their coverage claim, the Katerndahls also rely on one sentence in their petition alleging grossly negligent behavior: "To the extent that the foregoing acts or omissions are not medical negligence and gross negligence, they present otherwise actionable negligence and gross negligence." Again, however, the eight corners rule mandates that we look to the facts pled and not to causes of action alleged in determining coverage. *Terra Int'l*, 829 S.W.2d at 272. Accordingly, the facts pled in this case implicate only intentional acts. If negligent acts are implicated, they are alleged to have occurred only in the course of Dr. Katerndahl's role as a physician.

Because the facts pled in support of Mrs. Katerndahl's emotional distress claims relate only to intentional acts on the part of Dr. Katerndahl and because the insurance policies at issue clearly exclude coverage for injuries or damages caused intentionally by or at the direction of the insured, State Farm had no duty to defend Dr. Katerndahl for Mrs. Katerndahl's claims of emotional distress. Likewise, the facts alleged by Mrs. Katerndahl regarding Dr. Katerndahl's actions as her physician were excluded from coverage under either the business pursuits or professional service provisions of the State Farm policy. Therefore, we find that, as a matter of law, State Farm owed no duty to

defend Dr. Katerndahl against Mrs. Katerndahl's allegations.

Because, as discussed above, State Farm had a valid reservation of rights, State Farm could have properly withdrawn its defense of Dr. Katerndahl when it became clear that it was not obligated to offer such a defense under the policy. *See J.E.M.,* 928 S.W.2d at 674; *American Eagle,* 932 S.W.2d at 174; *Consolidated Underwriters v. Loyd W. Richardson Const. Corp.,* 444 S.W.2d 781, 785 (Tex.Civ.App.—Beaumont 1969, writ ref'd n.r.e.). However, the Katerndahls contend that State Farm waived its right to withdraw under the reservation of rights letter because the letter was ambiguous and because Kathy Fite, a State Farm agent, informed Dr. Katerndahl that State Farm would defend him to a verdict.

The facts contained in the record which are pertinent to this argument are as follows: On April 5, 1991, State Farm sent Dr. Katerndahl a reservation of rights letter regarding his wife's claims against him. The letter confirmed that State Farm would defend Dr. Katerndahl against his wife's claims subject to the reservation of its right to deny coverage based upon six non-coverage defenses described fully in the letter. Dr. Katerndahl never objected to the reservation of rights and State Farm continued the defense under the terms set forth in the reservation of rights letter. On April 24, 1991, during the taking of a recorded statement, Kathy Fite, a State Farm adjuster, told Dr. Katerndahl that, under the reservation of rights letter, State Farm would provide him a defense until a verdict was rendered. However, on August 22, 1991, State Farm sent Dr. Katerndahl a revised reservation of rights letter. The revised letter informed Dr. Katerndahl that two of the original six potential defenses were resolved in his favor. The letter goes on to specifically reserve State Farm's right to withdraw its defense on the basis of the four remaining non-coverage defenses.

■ We find the Katerndahls' contention that State Farm waived its reservation of rights unpersuasive. First, in Texas, the doctrines of waiver and estoppel cannot be used to create insurance coverage where none exists by the terms of the policy. *Texas Farmers Ins. Co. v. McGuire,* 744 S.W.2d 601, 603 (Tex.1988); *Paradigm Ins. Co. v. Texas Richmond Corp.,* 942 S.W.2d 645, 652 (Tex.App.—Houston [1st Dist.] 1997, writ filed). An exception to this general rule has been recognized when an insurer, with knowledge of facts indicating non-coverage, assumes the insured's defense without a reservation of rights. *Paradigm,* 942 S.W.2d at 652. In that situation, the insurer waives all policy defenses or it may be estopped from raising them. *Id.* As discussed above, State Farm had no duty under the terms of the insurance policy to provide Dr. Katerndahl a defense to the allegations contained in Mrs. Katerndahl's petition. However, State Farm provided Dr. Katerndahl a conditional defense after specifically reserving its right to deny coverage at a later date.

■ The Katerndahls contend that State Farm's reservation of rights was ambiguous because it did not specifically state that State Farm could withdraw its defense prior to a verdict. However, there is no authority for the Katerndahl's contention that a reservation of rights must specify the point at which a defense may be withdrawn in order to be valid. The purpose of a reservation of rights is to allow the insurer the opportunity to research questions of liability. *State Farm Lloyds, Inc. v. Williams,* 791 S.W.2d 542, 550 (Tex.App.—Dallas 1990, writ denied). In most situations, there is no way to determine the exact point in time that those questions will be resolved. We find nothing ambiguous about State Farm's reservation of rights.

■ As to Kathy Fite's statement that State Farm would represent Dr. Katerndahl to a verdict, State Farm contends that the statement constitutes parol evidence, which is not admissible to modify the terms of an unambiguous agreement. *See Fidelity & Casualty Co. v. Burts Bros., Inc.,* 744 S.W.2d 219, 222 (Tex.App.—Houston [1st Dist.] 1987, writ denied). We disagree. The rule against parol evidence excludes only evidence of oral agreements made before or at the same time as the original written agreement; it does not apply to statements made subsequent to

the finalization of the original agreement. *Lakeway Co. v. Leon Howard, Inc.*, 585 S.W.2d 660, 662 (Tex.1979); *Digby v. Texas Bank,* 943 S.W.2d 914, 928 (Tex.App.—El Paso 1997, writ denied). Accordingly, Kathy Fite's statement is not subject to the parol evidence rule.

 However, assuming that the Katerndahls are correct in their claim that Kathy Fite's statement operated to waive State Farm's non-coverage defenses where there was a valid reservation of rights, we find that the success of such a claim depends on a showing of harm or prejudice, which the Katerndahls have failed to demonstrate. The Katerndahl's argue that there is no requirement in a case involving waiver, as there is in a case involving estoppel, that harm or prejudice be shown. We disagree. Regardless of whether the insured relies upon waiver or estoppel to challenge the non-coverage defense of its insurer, courts generally require a showing that the insured was clearly harmed by the insurer's actions. *Paradigm,* 942 S.W.2d at 652–53; *Williams,* 791 S.W.2d at 552–53; *Pennsylvania Nat. Mut. Cas. Ins. Co. v. Kitty Hawk Airways, Inc.*, 964 F.2d 478, 481 (5th Cir.1992).

 A demonstration of such harm must necessarily include proof that the insured relied to his detriment on the insurer's actions. In this case, while the record contains proof that Kathy Fite did make the statement at issue, there is nothing in the record to indicate that Dr. Katerndahl relied on the statement to his detriment. Our examination of the record reveals that, following Kathy Fite's statement, Dr. Katerndahl behaved exactly as he did before the statement was made; that is, he participated in the defense of his case with his attorney of choice. In fact, the record reflects that Dr. Katerndahl settled the case, not because State Farm withdrew its defense, but for the welfare of his children and to prevent his wife from recovering a large sum of money if the case was tried to a verdict.

The record also indicates that Dr. Katerndahl believed the medical malpractice allegations to be the primary focus of the case. The record indicates that Dr. Katerndahl thought it was "ridiculous" to expect his

homeowner's insurance carrier to defend him for acts he performed as a physician, and he fully expected his medical malpractice carrier to settle the case. In fact, the attorney defending Dr. Katerndahl stated that he intended to take only a passive role in the trial of this case because he expected Dr. Katerndahl's medical malpractice carrier to take the primary role in defending Dr. Katerndahl at trial. The medical malpractice carriers continued to represent Dr. Katerndahl at the mediation after State Farm withdrew its defense.

Under these facts, the Katerndahls have failed to meet their burden of establishing that Dr. Katerndahl was harmed by the withdrawal of State Farm's defense. The only harm alleged by the Katerndahls in this respect is that Dr. Katerndahl was "abandoned" in the middle of the mediation of an acrimonious lawsuit days before the trial date. This bare allegation is simply not enough to discharge the Katerndahls' burden.

For the foregoing reasons, the Katerndahls are not entitled to assert the doctrines of waiver and estoppel to defeat State Farm's valid reservation of rights in this case. Accordingly, the trial court properly granted State Farm's motion for summary judgment and denied the Katerndahls' motion for summary judgment. Because our disposition of the Katerndahls' points of error is favorable to State Farm, it is not necessary for us to address State Farm's cross point of error regarding the propriety of the agreement between Dr. Katerndahl and Mrs. Katerndahl which resulted in the instigation of this lawsuit.

The judgment of the trial court is affirmed.