**CANAL INSURANCE COMPANY,
Plaintiff,**

v.

**Juan FLORES, Sr., Individually and on Behalf of the Estate of Raymond Flores, Deceased, et al., Defendants.**

**Civil Action No. EP–06–CV–0084–KC.**

United States District Court,
W.D. Texas,
El Paso Division.

Nov. 9, 2007.

Vaughan E. Waters, Thornton, Biechlin, Segrato, Reynolds & Guerra, L.C., San Antonio, TX, for Plaintiff.

James F. Scherr, Michael Rudy Wyatt, Shapleigh & Wyatt, PC, David R. Pierce, Paul Gay, Ryan Little, Law Office of David Pierce, El Paso, TX, for Defendants.

## *ORDER*

KATHLEEN CARDONE, District Judge.

On this day, the Court considered Defendants Distribution Services, Inc., and HRA Trucking's Motion for Summary Judgment. For the reasons set forth below, Defendants' Motion is **DENIED**.

## I. BACKGROUND

Plaintiff Canal Insurance is an insurance carrier incorporated under the laws of South Carolina and authorized to sell policies in Texas. *See* Defendants' Proposed Undisputed Facts ¶¶ 2, 3.[1] Plaintiff Canal Indemnity is a wholly-owned subsidiary of Canal Insurance and is an eligible surplus lines carrier incorporated under the laws of Delaware; Canal Indemnity may sell insurance in Texas through an authorized

---

1. Unless otherwise stipulated, all facts in this section which are derived from Defendants' Proposed Undisputed Facts are those which Plaintiffs have admitted to be true.

agent. *Id.* ¶¶ 2, 4. Both Plaintiffs have their principal place of business in Greenville, South Carolina. *Id.* Defendant Complete Distribution Services, Inc. ("CDSI") is a Texas Corporation involved in the transportation business with its principal place of business in El Paso, Texas. *Id.* ¶ 1. Defendant HRA Trucking ("HRA") is the assumed name of a company doing business in Texas. Pls.' Fifth Am. Compl. ¶ 6; Defs' Answer ¶ 6.

In May 2004, CDSI obtained an insurance policy from Texas Specialty Underwriters, Inc., a Third-party Defendant in the instant case. Defs.' Mot. for Summ. J., Attach. No. 2 ("The Policy"). It is unclear either from the record or from the Policy itself whether Canal Insurance or Canal Indemnity issued the Policy since both companies' names appear on different pages of the Policy and there is conflicting sworn testimony in the record. *See Id.;* Defs.' Mot. for Summ. J, Ex. 4 (Cotton Dep. 9:25–22:18, Feb. 7, 2007).

Regardless of who issued it, the plain language of the Policy states that it provides "basic automobile liability" insurance for a 1998 International Tractor owned by CDSI, along with "any trailer while singularly attached to a scheduled tractor." Defs.' Mot. for Summ. J, Attach. No. 2 ("The Policy"). The Policy covered the vehicle for twelve (12) months lasting from May 17, 2004 to May 17, 2005. *Id.* at 39. The Policy specifically provided that:

> The company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury or property damage to which this insurance applies and arising out of the ownership, maintenance or use, including loading and unloading, for the purposes stated as applicable thereto in the declarations,

of an owned automobile or of a temporary substitute automobile, and the company shall have the right and duty to defend any suit against the insured seeking damages on account of such bodily injury or property damage, even if any of the allegations of the suit are groundless, false or fraudulent, and may make such investigation and settlement of any claim or suit as it deems expedient. . . .

*Id.* at 42.

The Policy also stated on the same page that:

> This insurance policy does not apply . . . to bodily injury to any employee of the insured arising out of and in the course of his employment by the insured or to any obligation of the insured to indemnify another because of damages arising out of such injury[.]

*Id.*

On November 10, 2004, Raymond Flores—allegedly acting as an employee of either HRA or CDSI—was killed in an automobile accident on Interstate 20 in Smith County, Texas, while driving the CDSI-owned tractor-trailer rig insured under the Policy.[2] Defendants' Proposed Undisputed Facts ¶ 9. Thereafter, Defendants Veronica Flores, on behalf of the Estate of Raymond Flores and as Next Friend of Michael Anthony Mendoza, a Minor Child, Juan Flores, Sr., and Olivia Marguia, as Guardian and Next Friend of Natalia Dahil Flores, a Minor Child, filed a lawsuit against CDSI and HRA in the 34th District Court of El Paso, Texas. *Id.* ¶ 10.

On November 22, 2005, Canal Insurance sent a reservation of rights letter ("the Letter") to CDSI. *Id.* ¶ 11; Defs.' Mot. for Summ. J, Ex.2. The Letter was sent on

---

2. One of the facts in dispute in this case is whether Mr. Flores was an employee of CDSI at the time in question, and thus subject to the Policy.

letterhead bearing the name "Canal Insurance Company" and stated that "Canal Insurance carries the truck liability insurance for Complete Distribution Services and have [sic] received notice of the above accident by way of a lawsuit." Defs.' Mot. for Summ. J, Ex.2. In addition, the Letter stated that "[s]ince Mr. Flores was an employee in the course and scope of his employment at the time [of the accident], we do not feel our truck liability insurance would apply." *Id.* To obtain a ruling on the rights of the parties under the coverage, the Letter further stated that Canal Insurance would file a declaratory judgment action. *Id.* The Letter stated that in the meantime, Canal Insurance had hired an attorney to provide CDSI a defense to the underlying lawsuit, "but only under a strict reservation of all rights afforded us by the terms and conditions of the policy and by the law." *Id.* Canal Insurance made reference to no other policy exclusion in the Letter as to why CDSI may not be covered under the Policy other than the claim that Raymond Flores was an employee of CDSI at the time of the accident. Defendants' Proposed Undisputed Facts ¶ 14. No federal endorsement was ever mentioned in the Letter. *Id.* ¶ 16. Finally, Canal Insurance did not make any reference in the Letter to Canal Indemnity, nor did Canal Indemnity ever send a letter to CDSI claiming a reservation of rights on its own behalf. *Id.* ¶ 20.

On February 23, 2006, Canal Insurance filed its original declaratory judgment action, naming itself as Plaintiff. *Id.* ¶ 19; Pl.'s Original Compl. ¶ 1. On April 20, 2007, Plaintiffs filed their Fifth Amended Complaint, adding Canal Indemnity as Co–Plaintiff. Pls.' Fifth Am. Compl. ¶ 1. Throughout Plaintiffs' amended complaints, they state that "Canal [Insurance] is the re-insurer for Canal Indemnity" and not the insurer of CDSI. *See, e.g.,* Pl.'s Original Compl. ¶ 7; Pl.'s Fifth Am. Compl. ¶ 14. Plaintiffs also state in their complaints that Canal Indemnity issued CDSI the Policy in question, not Canal Insurance. *Id.* On May 7, 2007, CDSI and HRA filed a counterclaim against Plaintiffs, alleging, *inter alia,* fraud, conspiracy and breach of contract. *See* Defs.' Answer to Pls.' Fifth Am. Compl. and Countercl.

On June 13, 2007, Defendants CDSI and HRA filed a Motion for Summary Judgment. Defendants claim first that Canal Indemnity and Canal Insurance waived all policy defenses because both companies failed to defend CDSI under a reservation of rights. Defs' Mot. for Summ. J. ¶¶ 15–18. CDSI and HRA also claim that Canal Insurance has no standing to seek declaratory judgment since there is no privity between Defendants and Plaintiff Canal Insurance. *Id.* ¶¶ 19–20.[3]

## II. DISCUSSION

The Court notes at the outset that Defendant's Motion for Summary Judgment is actually a motion for partial summary judgment because the Motion does not request the Court to rule on Defendants' Counterclaims as set forth in Defendants' Answer to Plaintiffs' Fifth Amended Complaint and Counterclaim. The Court will therefore proceed accordingly.

### A. Standard

Summary judgment is required "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a

---

**3.** Defendants' third ground for summary judgment—a conditional argument premised on a potential ruling by this Court that Canal Indemnity issued the Policy—will not be addressed since the Court declines to hold at this stage which Plaintiff issued the Policy.

judgment as a matter of law." FED. R.CIV.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Warfield v. Byron,* 436 F.3d 551, 557 (5th Cir.2006). The substantive law identifies which facts are material. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202,(1986); *Ellison v. Software Spectrum, Inc.,* 85 F.3d 187, 189 (5th Cir. 1996). A dispute about a material fact is genuine only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505; *Ellison,* 85 F.3d at 189.

"[The] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex,* 477 U.S. at 323, 106 S.Ct. 2548; *Wallace v. Texas Tech. Univ.,* 80 F.3d 1042, 1046–1047 (5th Cir.1996). If the moving party meets its initial burden, the nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." FED.R.CIV.P. 56(e). The nonmovant's burden may not be satisfied by "conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence." *Warfield,* 436 F.3d at 557 (quoting *Freeman v. Texas Dep't of Crim. Justice,* 369 F.3d 854, 860 (5th Cir.2004)). Factual controversies are to be resolved in favor of the nonmovant, "but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir.1994) (en banc). Thus, the ultimate inquiry in a summary judgment motion is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as

a matter of law." *Anderson,* 477 U.S. at 251–52, 106 S.Ct. 2505.

**B. Waiver and Estoppel**

Defendants CDSI and HRA Trucking argue first that Plaintiffs waived all Policy defenses and are moreover estopped from raising those defenses because Canal Indemnity failed to defend CDSI in the underlying lawsuit pursuant to a reservation of rights. Def.'s Mot. for Summ. J. ¶¶ 15–18. Plaintiffs allege in their pleadings that Canal Indemnity issued the Policy. However, it is undisputed that it was not Canal Indemnity but Canal Insurance who sent CDSI a letter claiming a reservation of rights. Defendants argue therefore that Plaintiffs cannot now claim that the accident fell outside of the Policy when Canal Indemnity never issued a reservation of rights and Canal Insurance, by its own admission, did not issue the policy. *Id.* Plaintiffs argue, however, that even if no letter reserving Plaintiffs' rights had been sent, Defendants summary judgment still fails since Defendant has not been harmed by Plaintiffs' actions. Pls.' Resp. ¶ 9.

Because this is a diversity action, the Court will apply the law of the state in which it sits and in which the events at issue took place, namely Texas law. *See Erie R.R. v. Tompkins,* 304 U.S. 64, 78, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). The Texas Supreme Court described an insurer's reservation of rights as "the notification to the insured that the insurer will defend the insured, but that the insurer is not waiving any defenses it may have under the policy, and it protects an insurer from a subsequent attack on its coverage position on waiver or estoppel grounds." *Texas Ass'n of Counties County Gov't Risk Mgmt. Pool v. Matagorda County,* 52 S.W.3d 128, 133 (Tex.2000) (citations omitted); *see also Ross v. Marshall,* 456 F.3d 442, 443 (5th Cir.2006) ("An insurer who defends its in-

sured under a full reservation of rights provides a defense in the liability action, but reserves the right to contest coverage later."). Once a defense is taken under a valid reservation of rights, the insurer may withdraw the defense when it becomes clear that there is no coverage under the applicable policy. *Katerndahl v. State Farm Fire & Cas. Co.*, 961 S.W.2d 518, 521 (Tex.App.1998) (citation omitted). The purpose of the reservation of rights letter is to permit the insurer to provide a defense for its insured while it investigates questionable coverage issues. *Id.* (citation omitted).

▉ It is well-settled Texas law that doctrines of waiver and estoppel cannot be used to create insurance coverage where none exists under the terms of the policy. *Pennsylvania Nat'l Mut. Cas. Ins. Co. v. Kitty Hawk Airways, Inc.*, 964 F.2d 478, 480–81 (5th Cir.1992) (citations omitted). There remains, however, a well-established exception to the above-stated rule, known as the *Wilkinson* Rule, which states that:

> if an insurer assumes the insured's defense without obtaining a reservation of rights or a non-waiver agreement and with knowledge of the facts indicating non-coverage, all policy defenses, including those of non-coverage, are waived, or the insurer may be estopped from raising them.[4]

*Farmers Texas County Mutual Ins. Co. v. Wilkinson*, 601 S.W.2d 520, 521–22 (Tex. Civ.App.1980) (citations omitted); *see also Texas Farmers Ins. Co. v. McGuire*, 744

S.W.2d 601 n. 1 (Tex.1988); *Kitty Hawk Airways*, 964 F.2d at 481.

▉ "This rule is based on the 'apparent conflict of interest that might arise when the insurer represents the insured in a lawsuit against the insured and simultaneously formulates its defense against the insured for noncoverage.'" *Wilkinson*, 601 S.W.2d at 522 (quoting *Pacific Indemnity Co. v. Acel Delivery Serv.*, Inc., 485 F.2d 1169 (5th Cir.1973)). In order for a reservation of rights to be effective, the reservation must be unambiguous; if it is ambiguous, "the purported reservation of rights must be construed strictly against the insurer and liberally in favor of the insured." *Id.* at 523 (citing *Employers Cas. Co. v. Tilley*, 496 S.W.2d 552 (Tex. 1973)) (other citations omitted).

The Fifth Circuit, in applying Texas law, has stated that the *Wilkinson* exception applies and "trumps the general no-expanded-coverage rule" when the insured can show:

> (1) that the insurer had sufficient knowledge of the facts or circumstances indicating non-coverage but (2) assumed or continued to defend its insured without obtaining an effective reservation of rights or non-waiver agreement and, as a result, (3) the insured suffered some type of harm.

*Kitty Hawk Airways*, 964 F.2d at 481 (citing *McGuire*, 744 S.W.2d at 603 n. 1; *State Farm Lloyds, Inc. v. Williams*, 791 S.W.2d 542, 552–53 (Tex.App.1990)).

---

**4.** As the Fifth Circuit pointed out in *Kitty Hawk Airways:*

> The Doctrines of waiver and estoppel, although used somewhat interchangeably ... are distinct and separate doctrines: waiver requires the voluntary surrender of a known right (for example, if the insurer knows that it can raise a non-coverage defense but chooses not to), while estoppel

requires a showing that the insured was prejudiced by the insurer's conduct.
*Kitty Hawk Airways*, 964 F.2d at 480 n. 5 (citations omitted).
In the instant case, because the Court holds that Plaintiffs have neither waived any Policy defenses nor are estopped from claiming them, the Court will not rule as to which doctrine applies.

In *Wilkinson,* the insurance company sent two simultaneous letters to the insured, one promising an unconditional defense to the underlying claim, and another reserving its right to withdraw the defense subject to a declaratory judgment construing the rights of the parties. *Wilkinson,* 601 S.W.2d at 522. The court held that "the two letters, taken together, express, at best, an ambiguous reservation of rights" and thus failed to effectively reserve the rights of the insurance company to withdraw coverage. *Id.* at 523. As such, the court held that the insurance company assumed the defendant's defense with knowledge of facts indicating possible non-coverage but did not reserve its rights. *Id.* The insurance carrier thus waived the defense of non-coverage. *Id.*

■ In the instant case, there are not two letters at issue but rather two insurance companies, only one of which is directly responsible for providing a defense and indemnifying Defendant CDSI pursuant to the Policy. Plaintiffs themselves assert that one insurance company—Canal Indemnity—issued the insurance policy while the other—Canal Insurance—issued the reservation of the rights. The Court holds that the letter asserting the reservation of rights is at best ambiguous, because it reserves the rights of one insurance company, who, by Plaintiffs' own admission, is not the company who issued the Policy. Construing the letter strictly against the insurers and liberally in favor of the insured, and taking Plaintiffs at their word, the letter fails to stand as a reservation of rights for Canal Indemnity,

since nowhere is Canal Indemnity mentioned in the letter.[5]

■ Moreover, the Court holds that the record remains inadequate for the Court to rule which insurance company actually issued CDSI the insurance Policy. The Policy itself is ambiguous as to who issued it, as both Canal Indemnity and Canal Insurance appear to be the insurance carriers at different places in the document. For example, the front page of the Policy states that it was sent by "Canal Insurance Company" and makes no reference to Canal Indemnity. *See* Def.'s Mot. for Summ. J. Attach. No. 2, 38. In addition, on the page containing the language stating the employee exception at issue in the underlying case, the words "Canal Insurance Company" appear on the top. *Id.* at 42. Meanwhile, on several other pages—including the page describing the duration of the Policy and the vehicles that it covers—the name "Canal Indemnity Company" appears. *Id.* at 39–41.

In addition to the ambiguity in the Policy itself, there is conflicting testimony in the record as to who issued the Policy. For example, the Policy refers throughout to the rights and responsibilities of "the company," a term which a Canal Insurance claims manager testified refers to Canal Insurance. Cotton Dep. 19:10–11. However, that same claims manager states earlier in the same deposition that it was Canal Indemnity and not Canal Insurance who issued the policy. Cotton Dep. 17:7–8. When confronted with the apparent ambiguities in the text of the Policy, the claims

---

**5.** Plaintiffs also argue that Defendants' Motion fails because Defendants cite no authority as to why Canal Insurance cannot issue a reservation of rights on behalf of Canal Indemnity. Pls.' Resp. ¶ 14. However, as stated above, there is nothing in the Letter that states that Canal Insurance is reserving anyone's rights other than those of Canal Insur-

ance. The Letter makes no mention of Canal Indemnity as the insurance carrier and in fact states that "Canal Insurance carries the truck liability insurance for Complete Distribution Services[.]" See Defs.' Mot. for Summ. J. Ex. 2. Therefore, any argument that Canal Insurance issued the reservation of rights on behalf of Canal Indemnity fails.

manager—an authorized representative of Canal Insurance—admits that he could not say one way or the other who insured the vehicle in question. Cotton Dep. 22:16–18.

Because the Policy is itself ambiguous, and it remains unclear from the record who issued it, any subsequent reservation of rights by either Plaintiff is, at best, ambiguous. Therefore, construing the document strictly against the insurance companies and in favor of the insured, the subsequent reservation of rights issued by Canal Insurance fails. Because one of the Plaintiffs assumed CDSI's defense with knowledge of the facts indicating possible noncoverage but with no effective reservation of rights, the Court holds the first two prongs of the *Wilkinson* test are satisfied.

■ Plaintiffs further argue that because they filed suit for declaratory judgment, this alone is enough to reserve their rights pursuant to *Wilkinson*. Pls.'s Response ¶ 6. Plaintiff's point to the language in *Wilkinson* which states that "[h]ad it been pursued to its completion before appellant took any further action on the claim, appellant's suit for declaratory relief would have been an adequate vehicle to determine whether appellee Wilkinson was covered by the provisions of its policy[.]" *Wilkinson*, 601 S.W.2d at 522. Plaintiffs, however, have misread *Wilkinson*. *Wilkinson* states:

"When an insurer is faced with the dilemma of whether to defend or refuse to defend a proffered claim, it has four options: (1) completely decline to assume the insured's defense; (2) seek a declaratory judgment as to its obligations and rights; (3) defend under a reservation of rights or a non-waiver

agreement; or (4) assumed the insured's unqualified defense."

*Wilkinson*, 601 S.W.2d at 522; *see also Katerndahl*, 961 S.W.2d at 521 (citation omitted).

The Court agrees that had Plaintiffs in the instant case solely moved forward with a suit for declaratory judgment before taking other action, that such a suit would have been an adequate vehicle to determine the rights of the parties. However, like in *Wilkinson*, one of the Plaintiffs in the instant case chose to move forward with a defense of Defendant CDSI in the underlying case. Moreover, like in *Wilkinson*, the Court holds the Letter purporting to reserve Plaintiffs's rights is ambiguous and insufficient. *See id*. Therefore, the Court holds that if Defendants satisfy the *Wilkinson* test, the declaratory judgment is not sufficient to reserve Plaintiff's rights to withdraw its defense or claim noncoverage.

■ However, the Court holds that Defendants have not satisfied the *Wilkinson* test. Despite satisfying the first two prongs, Defendants CDSI and HRA Trucking fail to satisfy the third prong, namely that they have been harmed or in any way prejudiced by Plaintiffs' defense in the underlying action.[6] *See Kitty Hawk Airways*, 964 F.2d at 481; *Williams*, 791 S.W.2d at 552–53. To satisfy the third prong of the *Wilkinson* test, Defendants must show how they have been harmed; otherwise the harm must be "clear and unmistakable." *Williams*, 791 S.W.2d at 553. Such a showing "must necessarily include proof that the insured relied to his detriment on the insurer's actions." *Katerndahl*, 961 S.W.2d at 524.

---

**6.** "Regardless of whether the insured relies on the doctrine of waiver to challenged the non-coverage defense of its insurer, courts generally require a showing that the insurer's

assumption of its insured's defense without reserving its rights harmed the insured." *Kitty Hawk Airways,* 964 F.2d at 481 n. 11 (citing *Williams,* 791 S.W.2d at 552).

In the instant case, Defendants have provided no evidence—nor have they even asserted—that they have been harmed or in any way prejudiced by Plaintiffs' assumption of their defense in the underlying state action. Nor have Defendants pointed to any evidence that Plaintiffs' appointed counsel manipulated CDSI's defense to better its future claim of noncoverage. *Cf. Kitty Hawk Airways,* 964 F.2d at 482. Nor is there any "clear and unmistakable" harm evident in the record. Absent any evidence or arguments to this effect, the Court cannot now hold the Defendants have been harmed by Plaintiffs' defense. Defendants have therefore failed to satisfy the third prong of the *Wilkinson* test.

In conclusion, the Court holds that Plaintiffs had sufficient knowledge of the facts or circumstances indicating CDSI's potential noncoverage, but neither Plaintiff provided an adequate reservation of rights in its defense of CDSI in the underlying action. However, Defendants CDSI and HRA Trucking have failed to demonstrate that they have in any way been harmed by either Plaintiff's assumption of CDSI's defense. The Court therefore holds that Defendants have failed to demonstrate that Plaintiffs have waived their right to withdraw their defense and assert noncoverage, and Plaintiffs are not estopped from asserting these rights in the instant declaratory judgment action. Accordingly, Defendants' Motion for Summary Judgment based on grounds of waiver and estoppel is **DENIED.**

### C. Standing

Defendants CDSI and HRA Trucking next argue that because Canal Insurance is merely a "re-insurer" of Canal Indemnity, no privity exists between Canal Insurance and the above-named Defendants. Defs.' Mot. for Summ. J. ¶¶ 19–20. There-

fore, Defendants argue, Canal Insurance had neither the authority to send CDSI a reservation of rights on Canal Indemnity's behalf nor does it now have the right to seek declaratory judgment against Defendants. *Id.*

The Court has held *supra* that the record remains inadequate for the Court to hold whether Canal Insurance or Canal Indemnity issued the Policy. Moreover, the Court has held that the Policy itself is ambiguous, and neither Plaintiff has provided Defendants with an adequate reservation of rights. Therefore, the Court declines to decide whether Canal Insurance is merely the re-insurer of Canal Indemnity or whether Canal Insurance is in fact the carrier on the Policy. The Court further declines to decide whether privity of contract exists between Canal Insurance, Canal Indemnity and Defendant CDSI since it remains unclear who issued the policy or what any related re-insurance contract states. Finally, the Court declines to hold whether Canal Insurance may reserve the rights of Canal Indemnity; the Court holds only that it has not effectively done so with the Letter it sent Defendant CDSI.

 Regardless, the Court does hold that Canal Insurance is an "interested party" in this action pursuant to the Texas Uniform Declaratory Judgment Act. Tex. Civ. Prac. & Rem. § 37.001 *et seq.* (Vernon 2007) ("The UDJA"). The UDJA states that any person "interested under a ... written contract, or other writings constituting a contract or whose rights, status, or other legal relations are affected by a ... contract ... may have determined any question of construction or validity arising under the instrument ... and obtain a declaration of rights, status or other legal relations thereunder." *Id.* § 37.004. The UDJA further holds that "all persons who have or claim any interest that would be

affected by the declaration must be made parties." *Id.* § 37.006. If Canal Insurance issued the insurance policy or is required to indemnify CDSI under the policy, then Canal Insurance's interests and legal relations are affected by this action. Similarly, if Canal Insurance is merely Canal Indemnity's re-insurer, Canal Insurance nonetheless remains an interested party to the underlying Policy. *See Miller v. Windsor Ins. Co.,* 923 S.W.2d 91, 94 (Tex. App.1996) (citing *Republic Ins. Co. v. Davis,* 856 S.W.2d 158, 164 (Tex.1993)) (allowing a reinsurer to file for declaratory judgment). Accordingly, Defendants CDSI and HRA Trucking's argument that Canal Insurance lacks standing to seek declaratory judgment fails, and their Motion for Summary Judgment on this point is **DENIED**.

## III. CONCLUSION

Defendants CDSI and HRA Trucking have failed to demonstrate that Plaintiffs have waived all their Policy defenses and are further estopped from raising them. Moreover, Defendants have failed to demonstrate that Plaintiff Canal Insurance lacks standing to bring a declaratory judgment in this case. Accordingly, it is hereby **ORDERED** that Defendants Motion for Summary Judgment (**Doc. No. 107**) is **DENIED**.

**SO ORDERED.**