COURT
OF APPEALS

                                       SECOND
DISTRICT OF TEXAS

                                                   FORT
WORTH

 

 

                                        NO.
2-04-120-CV

 

 

ULICO CASUALTY COMPANY                                 APPELLANT/APPELLEE

 

                                                   V.

 

ALLIED PILOTS ASSOCIATION                                APPELLEE/APPELLANT

 

                                              ------------

 

           FROM
THE 141ST DISTRICT COURT OF TARRANT COUNTY

 

                                              ------------

 

                                             OPINION

 

                                              ------------








This case arises out of a
dispute over insurance coverage for defense costs under a claims-made
policy.  In two issues, appellant Ulico
Casualty Company contends that it cannot be liable for appellee Allied Pilots
Association=s (the
Association) defense costs because waiver and estoppel cannot create coverage
for the Association=s
late-reported claim.  Ulico also claims
that the trial court erred by vacating the jury=s damages award and entering judgment for almost double the amount of
the jury=s award.  The Association brings
three cross-issues, all contending that it is entitled to attorney=s fees in its breach of contract suit against Ulico.  Because we conclude that waiver and estoppel
apply in this instance and that the Association proved its damages as a matter
of law, we affirm the trial court=s judgment as to liability and damages.  However, because we also hold that the
Association is entitled to attorney=s fees under Texas Civil Practice and Remedies Code section 38.001(8),
we remand as to the Association=s request for attorney=s fees.  Tex. Civ. Prac. & Rem. Code Ann. ' 38.001(8) (Vernon 1997).

I.  Background Facts








On October 4, 1999, the
Association, the collective bargaining representative for the pilots of
American Airlines, was served in a suit alleging that it breached its duty of
fair representation to a class of Reno Air pilots who were hired by American
Airlines (the Allen suit).  At the
time, the Association was covered by a Union Liability Insurance Policy[1]
issued by Ulico.  The expiration date of
the policy had been extended twice by endorsement, first to September 25, 1999
and then to October 25, 1999.[2]  The policy required Ulico to pay

all Loss
which [the Association] shall become legally obligated to pay on account of any
claim made against [the Association] during the Policy Period or, if
exercised, during the Extended Reporting Period, for a Wrongful Act committed,
attempted, or allegedly committed or attempted by [the Association] before or
during the Policy Period, and reported to [Ulico] . . . during
the Policy Period or the Extended Reporting Period, if elected.  [Emphasis added.]

 

The policy defined ALoss@ to include
defense costs.  The policy further
provided that Aas a
condition precedent to [the Association=s] rights under [the] policy,@ the Association was required to Agive [Ulico] written notice during the Policy Period or the
Extended Reporting Period, if elected, of any claim made against any of
them [the insureds] for a Wrongful Act.@ [Emphasis added.][3]









The Allen suit was
served on the Association before the October 25, 1999 expiration date of the
Ulico policy, but the Association did not send notice of the suit to Ulico
until November 5, 1999, after the policy had expired.  Upon receiving the claim, Ulico assigned it
to Sheila Bowers, a senior claims analyst for Ulico, on December 8, 1999.  On March 1, 2000, Bowers sent a coverage
letter to Steve Hoffman, the Association=s counsel,[4]
which specifically stated that A[i]n the context of this litigation Defense Costs are afforded to@ the Association.  The letter
globally reserved the right to contest coverage under sections VA(6) and VA(9)
of the policy and also concluded with the following:

Ulico
. . . expressly reserves all rights under the policy and available at law to
deny coverage and/or rescind the policy on additional alternative bases as
other terms, conditions, exclusions, endorsements and provisions of the policy,
including representations, statements, declarations and/or omissions in
connection with the application therefore, are found to be applicable. 

 

The letter did not specifically reserve the right
to contest coverage if it was determined that the Association=s claim was filed outside the policy=s reporting period.  With the
letter, Bowers enclosed Ulico=s Litigation Management Guidelines, a defense attorney evaluation
form, and an attorney time forecast and asked the Association=s counsel to complete and return them within thirty days, along with his
billing rates.  Hoffman did not respond
to Bowers=s request at
that time, but he did bill the Association monthly for his work on the Allen
suit, and the Association paid the bills.








Bowers and Hoffman did not
have any further contact until April 25, 2001, when Bowers sent an additional
letter to Hoffman=s partner,
Edgar James, stating that A[p]ursuant to my March 1, 2000 reservation of rights letter, Ulico has
agreed to reimburse [the Association] for reasonable and necessary defense
expenses.@  This letter contained no reservation of
rights language.  Bowers enclosed the
same forms she had forwarded in March 2000 and asked that they be completed
within two weeks.  Hoffman responded on
May 3, 2001.  At that time, his firm had
incurred approximately $635,000 in defense costs on the Allen suit, all
of which had been paid by the Association. 

On September 14, 2001, the
trial court in the Allen suit granted summary judgment in the
Association=s
favor.  The plaintiffs in that case filed
an appeal, but they later dismissed it. 
Thus, the only ALoss@ that the Association suffered in connection with the Allen
suit was the defense expenses that it paid to Hoffman and others.








Bowers did not realize that the Association had not timely reported
its claim during the policy period as required by sections III.A and VIII of
the policy until after she received copies of Hoffman=s invoices for legal fees and expenses.  Ulico never informed the Association about
the mistake.  Instead, on November 28,
2001, Ulico brought this declaratory judgment action against the Association,
asking the trial court to determine that it did not owe defense costs to the
Association under the policy because the Association did not timely report its
claim.  The Association counterclaimed,
contending that Ulico breached its obligation to pay defense costs under the
policy.  The trial court realigned the
parties for trial. 

Upon conclusion of the trial, Ulico moved for a directed verdict on
all of the Association=s claims,
which the trial court denied.  The jury
found that Ulico had provided the Association an extended reporting period under
the policy, that Ulico had agreed, separate and apart from the policy, to cover
the Association=s defense
costs in the Allen suit, and that Ulico had waived its right to assert,
and was estopped from asserting, that the policy did not cover the Association=s claim for defense costs.  The
jury awarded the Association $308,235 in damages. 








Ulico filed a motion for judgment notwithstanding the verdict (JNOV),
asking that the trial court set aside the jury=s verdict on liability and damages. 
The Association moved for judgment on the verdict as to Ulico=s liability and JNOV as to the jury=s damages award, requesting that the trial court vacate the award and
award damages of $616,468.55 instead. 
The trial court granted Ulico=s motion as to the jury=s findings that Ulico had provided the Association an extended
reporting period under the policy and that Ulico had agreed, separate and apart
from the policy, to cover the Association=s defense costs in the Allen suit.  But it denied the motion as to the jury=s findings that Ulico had waived its right to assert, and was estopped
from asserting, that its policy did not cover the Association=s defense costs in the Allen suit.  The trial court therefore granted the
Association=s motion for
judgment on the verdict as to the waiver and estoppel theory of liability.  The trial court also granted the Association=s motion for JNOV, vacated the jury=s damage award, and awarded the Association damages of $616,468.55
instead.  

II.  Summary of Ulico=s Issues

In its first issue, Ulico contends that the trial court erred by
denying its motions for directed verdict and JNOV requesting that the trial
court set aside the jury=s findings
that Ulico waived and was estopped from denying coverage for the Association=s defense costs because the doctrines of waiver and estoppel cannot be
used to create coverage where none exists and no exception to this general rule
applies.  In its second issue, Ulico
claims that the trial court erred by granting JNOV as to the jury=s damages finding.








III.  Standard of Review

A directed verdict
is proper only under limited circumstances: 
(1) when the evidence conclusively establishes the right of the movant
to judgment or negates the right of the opponent; or (2) when the evidence is
insufficient to raise a material fact issue.  Prudential Ins. Co. v. Fin. Review Servs.,
Inc., 29 S.W.3d 74, 76-77 (Tex. 2000); Ray v. McFarland, 97 S.W.3d
728, 730 (Tex. App.CFort Worth 2003, no pet.).   

A trial court may disregard a jury verdict
and render judgment notwithstanding the verdict (AJNOV@) if no evidence
supports the jury findings on issues necessary to liability or if a directed
verdict would have been proper.  See Tex. R. Civ. P. 301; Tiller v.
McLure, 121 S.W.3d 709, 713 (Tex. 2003); Fort Bend County Drainage Dist.
v. Sbrusch, 818 S.W.2d 392, 394 (Tex. 1991).  Thus, the
propriety of a JNOV is determined under the no-evidence standard as well.








A legal sufficiency challenge may only be sustained
when:  (1) the record discloses a
complete absence of evidence of a vital fact; (2) the court is barred by rules
of law or of evidence from giving weight to the only evidence offered to prove
a vital fact; (3) the evidence offered to prove a vital fact is no more than a
mere scintilla; or (4) the evidence establishes conclusively the opposite of a
vital fact.  Uniroyal Goodrich Tire
Co. v. Martinez, 977 S.W.2d 328, 334 (Tex. 1998), cert. denied, 526
U.S. 1040 (1999); Robert W. Calvert, "No
Evidence" and "Insufficient Evidence" Points of Error,
38 TEX. L. REV. 361, 362-63 (1960).  In determining whether there is legally
sufficient evidence to support the finding under review, we must consider
evidence favorable to the finding if a reasonable factfinder could, and
disregard evidence contrary to the finding unless a reasonable factfinder could
not.  City of Keller v. Wilson, 168 S.W.3d 802, 827 (Tex. 2005). 

Anything more than a scintilla of evidence is legally
sufficient to support the finding.  Cont=l Coffee Prods.
Co. v. Cazarez, 937 S.W.2d 444, 450 (Tex. 1996); Leitch v. Hornsby,
935 S.W.2d 114, 118 (Tex. 1996).  When
the evidence offered to prove a vital fact is so weak as to do no more than
create a mere surmise or suspicion of its existence, the evidence is no more
than a scintilla and, in legal effect, is no evidence.  Kindred v. Con/Chem, Inc., 650 S.W.2d
61, 63 (Tex. 1983).  More than a
scintilla of evidence exists if the evidence furnishes some reasonable basis
for differing conclusions by reasonable minds about the existence of a vital
fact.  Rocor Int=l, Inc. v. Nat=l Union Fire Ins.
Co.,
77 S.W.3d 253, 262 (Tex. 2002). 

IV.  Ulico=s Liability Under Waiver and Estoppel Theories













In a proper case, estoppel
can prevent an insurer from asserting policy defenses.  Employers Cas. Co. v. Tilley, 496
S.W.2d 552, 560 (Tex. 1973); Tull v. Chubb Group of Ins. Cos., 146
S.W.3d 689, 694 (Tex. App.CAmarillo 2004, no pet.).  This
can occur when an insurer undertakes defense of a case without qualification or
reservation of the right to later deny its obligation to provide indemnity if
its insured is found liable.  See Am.
Indem. Co. v. Fellbaum, 114 Tex. 127, 263 S.W. 908, 909-10 (Tex. 1924); Tull,
146 S.W.3d at 694; Farmers Tex. County Mut. Ins. Co. v. Wilkinson, 601
S.W.2d 520, 522 (Tex. Civ. App.CAustin 1980, writ ref=d n.r.e.).  Generally, estoppel
cannot be used to create insurance coverage when none exists under the
policy.  Tex. Farmers Ins. Co. v.
McGuire, 744 S.W.2d 601, 602‑03 (Tex. 1988); Tull, 146 S.W.3d
at 694.  An exception to this general
ruleCcommonly called the Wilkinson exceptionCprovides that an insurer undertaking or continuing defense of a claim
while having knowledge of facts indicating the claim is not covered under its
policy, without an effective reservation of rights, may waive or be estopped
from asserting all policy defenses, including the defense of noncoverage. See,
e.g., Tull, 146 S.W.3d at 694; see also Wilkinson, 601 S.W.2d at 521‑22.  This exception is based on the assumption of
the defense of the underlying suit by the insurer and the resulting actual or
potential conflict of interest arising when an insurer represents the insured
in a suit against the insured and simultaneously formulates its defense against
the insured for noncoverage.  See Tull,
146 S.W.3d at 694-95; Wilkinson, 601 S.W.2d at 522.  Although the Texas Supreme Court has never
addressed this exception,[5]
it has been utilized, recognized, or both by several Texas courts of appeals[6]
and federal courts applying Texas law.[7]  See Tull, 146 S.W.3d at 694.








Here, Ulico argues that we
should not analyze this issue under the Wilkinson exception because this
court has never addressed it, and, further, that even if we adopt the Wilkinson
exception, the Association brought forward no evidence that it is applicable.  It is true that both the supreme court and
this court have never addressed the Wilkinson exception, but that does
not preclude us from applying it to this case. 
It has been employed by courts of appeals in this State, as well as
federal courts in the Fifth Circuit applying Texas law, for over twenty years[8]
and is described as a Awell-established@ exception[9]
to our general rules against estoppel and waiver creating coverage.  In addition, we believe the reasoning upon
which the exception is based to be sound; thus, we will analyze the estoppel
and waiver issue in this case in the context of the Wilkinson exception.

A.     Whether Ulico Undertook or Continued a Defense of the
Association=s
Claim

 

Ulico contends that there is
no evidence it undertook or assumed the defense of the Allen suit
against the Association because (a) the Association hired its own counsel, (b) AUlico did not direct or control the defense of@ the Allen suit, and (c) AUlico did not make or assist the [Association] or its counsel in
making any substantive or procedural decisions in defense of@ the Allen suit.  It
contends that A[a]ctual
control of the defense is necessary@ because Athe sole
reason the Wilkinson exception has been recognized . . . is to prevent
insurers from being able to use the counsel they select to work against their
policyholders by exploiting a conflict of interest.@ 








The evidence shows that on
December 10, 1999, Bowers wrote the Association to acknowledge its filing of
the claim.  In that letter, she informed
the Association that Apursuant to
Policy Section VII. paragraph 2, >No defense fees, costs, charges or expenses may be incurred or
settlements made without [Ulico=s] prior written consent=.@  Hoffman responded to her letter on December
17, 1999, on behalf of the Association. 
In that letter, he told Bowers that because the defense of the Allen
suit must be in accordance with the federal rules of procedure and the
directives of the trial court, it would not always be possible to get Ulico=s written consent prior to taking action and incurring defense
costs.  The only response Hoffman
received was Bowers=s March 2000
and April 2001 letters, in which she stated that the policy covered defense
costs in the action and with which she enclosed litigation guidelines and
attorney forms, requested that Hoffman complete the forms, and requested that
Hoffman advise her on the defense strategy.

The policy was issued with an
endorsement, entitled Defense and Settlement, which added the following to the
policy, in pertinent part:

Authority
is hereby granted to [the Association] to select counsel.  [Ulico] reserves the right to veto any
selection.  The consent by [Ulico] shall
not be unreasonably withheld.  If [the
Association] fails to make its selection known to [Ulico] within a reasonable
period, [Ulico] shall provide the defense.

 

. . .
.








[Ulico]
shall advise the Insureds in writing of its intent to withdraw from further
defense and to tender control of said defense to the Insureds.  [Ulico] shall have no liability for Defense
Costs of Loss accruing thereafter. . . .

 








We do not agree that the Wilkinson
exception should be interpreted as narrowly as Ulico contends it should
be.  The San Antonio Court of Appeals has
held that an insurer assumed the insured=s defense under similar facts. 
In Katerndahl v. State Farm Fire & Casualty Co., the insured
had filed for divorce and was already represented by counsel of his own
choosing when he filed a claim on his homeowner=s insurance asking to be defended against a counterclaim filed by his
wife in the divorce action.  961 S.W.2d
at 520, 524.  The appellate court held
that Ait is undisputed that State Farm provided Dr. Katerndahl a defense
under a reservation of rights. 
Specifically, State Farm informed Dr. Katerndahl, in writing, that it
would provide him a defense against his wife=s claims.@  Id. at 521.  The cases relied on by Ulico are inapposite
because the insureds in those cases were never sued, so there was no defense to
assume.  See Tull, 146 S.W.3d at
695; Basco v. McNeill Ins. Agency, No. 09-99-00234-CV, 2000 WL 992137,
at *3 (Tex. App.CBeaumont
2000, no pet.) (not designated for publication) (stating also that insurer only
conducted investigation of underlying claims, refused to discuss the claim with
one of the parties that had been sued, and never responded to the third party
claimants= demand
letter).

Moreover, that the Allen
suit was resolved in Ulico=s favor on summary judgment did not alleviate the potential for
conflict between Ulico and the Association. 
Although Ulico did not control the Association=s counsel or its defense of the Allen suit, it did agree to pay
the Association=s defense
costs and also attempted to assert the provision in its policy prohibiting the
Association from incurring defense costs without prior approval.  Had the Association not been granted summary
judgment, Ulico, knowing that it was investigating the coverage issue, could
have refused to approve fees and costs related to discovery, the procurement of
experts, or other matters related to the Association=s defense.  Wilkinson and
cases applying the Wilkinson exception do not require the presence of an
actual conflict; they are based on the potential for a conflict between
the insurer and insured.  See State
Farm Lloyds, 791 S.W.2d at 551; Wilkinson, 601 S.W.2d at 522.  Ulico should not get a Afree pass@ here simply
because the Association successfully defended the claim against it.

B.     Whether the Association
Suffered Prejudice








Ulico further contends that
the Association cannot show that it was prejudiced by Ulico=s failure to withdraw its coverage of defense costs until after the
Association had already incurred defense costs in the Allen suit.  A[A]pplication of the doctrines of estoppel or waiver under the Wilkinson
exception requires a showing that the insured was prejudiced by the insurer=s conduct.@  Tull, 146 S.W.3d at 695.

Bowers testified that around
the time she received Hoffman=s bills, she spoke to her director, Karen Sheppard, Aabout the coverage [for the Association=s defense costs] having been issued improperly.@  She stated that she did not
remember exactly when the discussion occurred, but Ait was definitely prompted by the pleadings received and the bills
received from Mr. Hoffman.@  She believed that the amount
of the bills, coupled with the pleadings, made her go back and review the
file.  After her first meeting with
Sheppard, Bowers had another meeting with Sheppard and Ulico=s chief legal officer, Joe Carabillo, but she could not recall when
that meeting occurred either.  Bowers
estimated that she had less than ten meetings with Carabillo between May 3,
2001 and November 18, 2001, probably occurring over a couple of weeks or Aless than a month@ before Ulico sued the Association.








On September 17, 2001,
Hoffman wrote Bowers a letter telling her that the trial court in the Allen
suit granted summary judgment in the Association=s favor and asking her to pay his bills.  Bowers could not recall if Ulico had decided
not to pay the defense costs at that time. 
On October 23, 2001, Hoffman sent Bowers another letter, informing her
that the Allen suit plaintiffs had appealed the summary judgment and
asking her again for a response regarding the outstanding defense costs.  Ulico did not respond to either of Hoffman=s letters.  On November 28,
2001, Ulico filed this declaratory judgment action against the
Association.  The Allen suit
plaintiffs decided not to pursue their appeal. 

Hoffman testified that if
Ulico had denied coverage within fifteen days of receiving the claim, he would
have Aofficially@ asked for,
and negotiated a premium for, an extended reporting period under the
policy.  When asked whether he would have
done anything differently in the Allen suit, Hoffman responded, AGiven the result, no.@  Hoffman agreed generally with
Ulico=s attorney that given the result of the case, the only harm the
Association suffered was that Ulico did not reimburse the Association for
defense costs.  During direct examination
by the Association, Jeffrey Chanon, an insurance producer with Waldman Brothers,
the Association=s insurance
broker, agreed that as a part of Acustom and practice@ in the industry, insurance companies will extend policy coverage
without payment of an additional premium in order to maintain relationships
with customers.[10]









In Katerndahl, which
is somewhat factually similar to this case, the San Antonio court of appeals
held that the insured was not harmed by the insurer=s promise to provide coverage for defense costs.  Katerndahl, 961 S.W.2d at 524.  The court determined that ADr. Katerndahl behaved exactly as he did before the statement
[agreeing to provide a defense] was made; that is, he participated in the
defense of his case with his attorney of choice.@  Id.  The court also noted that the record showed
that Dr. Katerndahl himself did not believe his homeowner=s insurance covered the medical malpractice-related claims against him
and that he thought it was Aridiculous@ to expect
the insurer to defend him against those claims. 
Id.








Here, the Association was
also able to defend itself with counsel of its choice.  However, the evidence shows that although the
Association received a favorable outcome in the Allen suit, it was
nevertheless harmed by Ulico=s representation that it would provide coverage for defense
costs.  First, the Association was denied
the opportunity to negotiate a satisfactory premium for an extension of
coverage in the face of seeking to defend a third party claim against 218
plaintiffs.[11]  Additionally, there is some evidence that Acustom and practice@ in the industry is to provide such an extension without payment of a
premium in order to maintain relations between the insurer and insured.  Here, the Association did not renew its
policy with Ulico, but instead bought a new policy from Legion Insurance
Company before reporting the Allen suit to Ulico; however, there is no
evidence that Ulico would not have extended the reporting deadline.  It had already extended the expiration date
of the policy twice upon the Association=s payment of an additional premium.








Moreover, the Association was
harmed by Ulico=s six-month
silence in the face of Hoffman=s repeated inquiries into the payment of the defense costs that Ulico
had promised it would pay.  Instead of
immediately informing the Association about Bowers=s mistake,[12]
Ulico waited six months to take any action. 
And when Ulico finally took action, it initiated a declaratory judgment
action against the Association, forcing it to incur additional attorney=s fees in defense of the declaratory judgment.  There is no evidence that Ulico informed the
Association either verbally or in writing that it was withdrawing its coverage
of defense costs prior to filing the declaratory judgment action.  Cf. Providence Washington Ins. Co.
v. A & A Coating, Inc., 30 S.W.3d 554, 557 (Tex. App.CTexarkana 2000, pet. denied) (holding that insurer who validly
reserved its right to deny coverage and who expressly agreed to give notice
before withdrawing coverage waived right to withdraw by waiting seven months
from the time it knew of policy defense to the time it gave notice of
withdrawal); W. Cas. & Surety Co. v. Newell Mfg. Co., 566 S.W.2d 74,
77 (Tex. Civ. App.CSan Antonio
1978, writ ref=d n.r.e.)
(same).[13]  We therefore conclude and hold that there is
more than a mere scintilla of evidence that the Association was prejudiced by
Ulico=s actions, that the Wilkinson factors have been met, and that Wilkinson
applies under these facts.

Having determined that the Wilkinson
exception applies, we conclude that there is legally sufficient evidence to
support the jury=s findings
on waiver and estoppel; thus, the trial court did not err by denying Ulico=s request for a directed verdict and its motion for JNOV on that
issue.  We overrule Ulico=s first issue.

 

 








V.  Propriety of JNOV on Damages

In its second issue, Ulico
contends that the trial court erred in granting JNOV as to the damages awarded
by the jury and entering judgment for a greater amount of damages than the jury
found.    

The rules regarding JNOV
apply to damage awards.  Johnson
Roofing, Inc. v. Staas Plumbing Co., 823 S.W.2d 783, 790 (Tex. App.CWaco 1992, no writ).  Thus, the
trial court=s granting
of the JNOV was proper if there is no evidence supporting the jury=s damage finding of $308,235 and if the evidence establishes the trial
court=s damage award of $616,468.35 as a matter of law.  See Cont=l Coffee Prods.
Co.,
937 S.W.2d at 450; Johnson Roofing, Inc.,
823 S.W.2d at 790.

Because the Association=s cause of action against Ulico was for recovery under an insurance
policy, a contract, we look to the language of the policy to determine the
proper measure of damages.  See Great
Tex. County Mut. Ins. Co. v. Lewis, 979 S.W.2d 72, 73 (Tex. App.CAustin 1998, no pet.).  The
policy states that Ulico will pay on the Association=s behalf all ALoss@ that the Association Ashall become legally obligated to pay@ as a result of a timely-reported claim.  The policy defines ALoss@ as Athe total amount@ the
Association Abecomes
legally obligated to pay@ as a result
of such claims, and includes ADefense Costs.@  ADefense Costs@ are defined
as 








costs,
charges and expenses (other than regular or overtime wages, salaries or fees of
the trustees, directors, officers, or employees of the [Association]) incurred
in the defense of legal actions, claims, or proceedings and appeals therefrom
and the cost of appeal, attachment or similar bonds and is a part of, and not
in addition to, the limit of liability provided in item 3 of the Declarations.

 

The liability limits of the policy are $2,000,000
for each Loss.  An endorsement to the
policy further provides that the Association may select its own counsel and
that Ulico may not unreasonably withhold its consent to the selection. 








The Association introduced
into evidence Hoffman=s May 3,
2001 response to Bowers, to which Hoffman attached copies of an invoice from
his firm showing total legal fees and expenses that had been paid by the
Association at that time in the amount of $589,302.83.  Hoffman had also attached the completed ADefense Attorney=s Evaluation@ that Bowers had requested, in which he informed Ulico that the
plaintiffs in the Allen suit sought $13 million to $62 million in
damages.  He estimated that the
Association had a 50 percent chance of prevailing and noted that A[i]f we [the Association] prevail on summary judgment, expenses could
be capped at current amount.@          The Association also introduced into evidence an exhibit
containing a summary of the total legal fees and expenses that it had paid in
connection with the Allen suit, $641,468.55, along with copies of
supporting invoices.  Hoffman testified
that all of the costs were reasonable and necessary in the defense of the Allen
suit, that he charged the rates he and the Association had agreed on, and that
he billed the Association fairly and did not overbill them.  Hoffman testified that the total defense
costs were $641,468.55 and that the Association paid that entire amount.  Because the Association=s policy had a policy deductible of $25,000, it sought $616,468.55 as
damages.

Bowers testified that she had
not reviewed the bills Hoffman submitted to determine if they complied with
Ulico=s litigation management guidelines, which were admitted into
evidence.  Hoffman did not sign the
litigation management guidelines she sent him in March 2000, nor did he sign
the copies that she resent in April 2001. 
According to Bowers, there is nothing that says attorneys have to sign
the guidelines, but Aif they want
their bills paid, it would be a good idea for them to sign@ them.  Bowers further
testified, however, that she had not determined that there were any unwarranted
or unjustified items included in the bills. 








The only controverting
evidence Ulico points to is its litigation management guidelines, claiming that
the jury could have determined that the total fees charged by Hoffman=s firm were unreasonable based on violations of the guidelines.[14]  But nothing in the Association=s policy indicates that defense costs must be in compliance with the
litigation management guidelines promulgated by Ulico, and there is no evidence
as to what the reasonableness of the costs would have been if the guidelines
had been complied with.  In addition, it
is clear that here the jury Asplit the baby@ and simply
divided the damages proved by the Association in half.








Ulico also contends that
because the policy states that no defense costs may be accrued without Ulico=s consent, the jury Awas entitled to determine a point in time after which it was
unreasonable for the [Association] to continue incurring defense costs without
Ulico=s prior consent.@  Then, in its reply brief, Ulico contends that
because most of the defense costs were incurred before Bowers=s March 2000 letter agreeing to pay for defense costs, the jury could
have determined that Ulico should not be liable for those costs.  But although the amount of litigation
expenses can be calculated from the record based on the date they were
incurred, it is impossible to determine from the record what amount of attorney=s fees were incurred at any given point in time during the Allen
suit because the invoices submitted as evidence do not give individual billing
rates or total amounts billed for each individual working on the suit for each
date fees were incurred.  More
specifically, and by way of example, the first invoice shows fees incurred
between October 4, 1999 and March 5, 2001. 
For the first thirty-four pages, it lists the date each individual
worked on the file, a description of what the individual did, and the amount of
time he or she spent on the task.  At the
end of this thirty-four page summary, the invoice shows the total time worked
for all persons working on the file and the total amount of fees billed during
that period.  There is no segregation of
fees by either individual or date.  Thus,
there is no way the jury could have determined that fees and expenses as of a
certain date were $308,235.








Accordingly, we hold that
there is no evidence to support the jury=s damage award of $308,235 and that the Association proved as a matter
of law that it was entitled to $616,468.55 in damages for the defense costs it
paid in connection with the Allen suit; thus, the trial court=s JNOV was proper.  See Hill
v. Spencer & Son, Inc., 973 S.W.2d 772, 776 (Tex. App.CTexarkana 1998, no pet.) (holding that no evidence supported jury=s damage award of $4,500, but evidence conclusively proved damages of
$18,000 as a matter of law; therefore, trial court should have granted JNOV as
to damages); Van Waters & Rogers, Inc. v. Quality Freezers, Inc.,
873 S.W.2d 460, 463, 465 (Tex. App.CBeaumont 1994, writ denied) (holding that no evidence supported jury=s damage award and that evidence conclusively proved damages in amount
awarded by trial court; thus, JNOV as to damages was proper).  We overrule Ulico=s second issue.

VI.  The Association=s Entitlement to Attorney=s Fees and Statutory Interest

In three cross-issues, the
Association contends that it was entitled to recover attorney=s fees in this declaratory judgment suit under section 38.001 of the
Texas Civil Practice and Remedies Code and article 21.55 of the Texas Insurance
Code.  It also contends that it was
entitled to statutory interest under article 21.55.  We will address the Association=s third and second cross-issues first because they are
dispositive.  See Tex. R. App. P. 47.1; Tex. Mut. Ins.
Co. v. Surety Bank, N.A., 156 S.W.3d 125, 131 n.4 (Tex. App.CFort Worth 2005, no pet.).

A.     Propriety of Attorney=s Fees under Section 21.55 of Insurance Code








In its third cross-issue, the Association contends that it is entitled
to statutory interest and attorney=s fees in this declaratory judgment suit in accordance with article
21.55 of the insurance code. Tex. Rev.
Civ. Stat. Ann. art. 21.55 (Vernon Supp. 2004-05).  Article 21.55 sets forth deadlines by which
an insurance company must respond to a claim. 
See id.; TIG Ins. Co. v. Dallas Basketball, Ltd.,
129 S.W.3d 232, 239 (Tex. App.CDallas 2004, pets. denied).  A Aclaim@ is defined
as Aa first party claim made by an insured or a policyholder under an
insurance policy or contract or by a beneficiary named in the policy or
contract that must be paid by the insurer directly to the insured or
beneficiary.@  Tex.
Rev. Civ. Stat. Ann. art. 21.55, ' 1(3); TIG Ins. Co., 129 S.W.3d at 239.  If an insurance company does not comply with
the requirements of the article, it is liable to pay Ain addition to the amount of the claim, 18 percent per annum of the
amount of the claim as damages, together with reasonable attorneys fees.@  Tex. Rev. Civ. Stat. Ann. art. 21.55, ' 6; TIG Ins. Co., 129 S.W.3d at 239.  A wrongful refusal to pay a claim may be
considered a failure to meet the requirements of article 21.55.  See TIG Ins. Co., 129 S.W.3d at
239; see also Higginbotham v. State Farm Mut. Auto. Ins. Co., 103 F.3d
456, 461 (5th Cir. 1997) (applying Texas law).








The Association contends that its claim against Ulico for the recovery
of costs incurred in defending the Allen suit is Aa first party claim that had to be paid directly to the Association --
the insured.@  The Association relies on Texas supreme court
dicta, as well as several federal cases and a Corpus Christi court of appeals
case construing article 21.55, in contending that article 21.55 applies to
breach of contract claims against an insurer for failure to provide a defense
or pay for defense costs even when the claim is in connection with a third
party claim against the insured.  See
State Farm Fire & Cas. Co. v. Gandy, 925 S.W.2d 696, 714 (Tex. 1996);
N. County Mut. Ins. Co. v. Davalos, 84 S.W.3d 314, 318-19 (Tex. App.CCorpus Christi 2002), rev=d on other grounds, 140 S.W.3d 685 (Tex.
2004); see, e.g., Rx.com, Inc. v. Hartford Fire Ins. Co., 364 F.Supp.2d
609, 620 (S.D. Tex. 2005); Housing Auth. of Dallas, Tex. v. Northland Ins.
Co., 333 F.Supp.2d 595, 603 (N.D. Tex. 2004) (AThis court therefore believes that, in light of the appellate court=s opinion in Davalos, the supreme court=s dicta in Gandy and the holdings of several federal district
courts, the Texas supreme court would likely decide that claims for defense are
first party claims for purposes of Article 21.55.@). 

Relying on the Dallas court of appeals=s contrary holding in TIG Insurance Co. v. Dallas Basketball, Ltd.,
Ulico contends that article 21.55 does not apply here because A[w]ell-established breach of contract case law provides procedures for
resolving the duty to defend issues in this coverage action,@ and article 21.55, Aby its plain language, applies only to first-party claims.@  













When a statute is clear and
unambiguous, we Ashould give
the statute its common meaning.@  St. Luke=s Episcopal Hosp. v. Agbor, 952 S.W.2d
503, 505 (Tex. 1997).  When language in a
statute is unambiguous, we will seek the intent of the legislature as found in
the plain and common meaning of the words and terms used.  Id.; In re K.L.V., 109 S.W.3d 61, 65
(Tex. App.CFort Worth
2003, pet. denied).  We do not need to
resort to rules of construction or extrinsic aids to construe a statute that is
clear and unambiguous.  St. Luke=s Episcopal Hosp., 952 S.W.2d
at 505; Cail v. Serv. Motors, Inc., 660 S.W.2d 814, 815 (Tex.
1983).  When a statute fails to define a
term, we apply and use its plain meaning. 
See Tex. Gov=t Code Ann. ' 312.002 (Vernon 2005) (instructing appellate court to use words= ordinary meaning).  We should
not adopt a construction that would render a law or provision meaningless.  Centurion Planning Corp. v. Seabrook
Venture II, No. 01-02-00518-CV, 2004 WL 2823125, at *3 (Tex. App.CHouston [1st Dist.] Dec. 9, 2004, no pet.).      Article
21.55 applies to Aa first
party claim . . . that must be paid by the insurer directly to the insured
or beneficiary.@  Tex.
Rev. Civ. Stat. art. 21.55, ' 1(3) (emphasis added).  First
party insurance protects an insured against damage to the insured=s own property and provides recovery for the insured=s own personal injuries.  Universe
Life Ins. Co. v. Giles, 950 S.W.2d 48, 53 n.2 (Tex. 1997); State Farm
Lloyds, 960 S.W.2d at 788-89.  A[A] first party claim is one in which an insured seeks recovery for
the insured=s own loss.@  Universe Life, 950
S.W.2d at 53 n.2.  In contrast, a third
party claim Arequires the
insurer to perform its duty to indemnify not directly to the insured but
directly, on the insured=s behalf, to
a third party claimant injured by the insured=s conduct.@  Hartman v. St. Paul Fire & Marine Ins.
Co., 55 F.Supp.2d 600, 603 (N.D. Tex. 1998).  In addition, insurance policies covering
third party claims typically obligate the insurer to defend the insured in
third party actions covered by the policy. 
Houston Petroleum Co. v. Highlands Ins. Co., 830 S.W.2d 153, 155
(Tex. App.CHouston [1st
Dist.] 1991, writ denied).  The duty to
defend arises only in connection with a third party claim.  Id.








The Association=s claim for costs incurred in defending the Allen suit does not
involve damage to its own property, nor does it seek recovery for its own
personal injuries.  The Association=s claim is for costs incurred in connection with the defense of a
third party claim, the Allen suit, for which Ulico agreed to reimburse
the Association in accordance with the policy. 
Although, here, defense costs are payable directly to the Association
because it chose to pay for defense expenses as they were incurred, the policy
does not require the Association to pay for such expenses.  Specifically, the policy states that Ulico Ashall have the right and duty to defend any suit to which this
insurance applies alleging a claim against [the Association] even if any of the
allegations are groundless, false or fraudulent, or alternatively may, at the
option of [Ulico], give its written consent to the defense of any such suit by
[the Association].@  In addition, the policy provides that Ulico Ashall pay on behalf of [the Association] all Loss to which [the
Association] shall become legally obligated to pay.@  Thus, under the policy, the
Association could have chosen to have Ulico engage an attorney on its behalf or
pay expenses related to the defense directly to the party to whom they were
owed.  Therefore, the Association=s claim for defense costs is not one that Amust be paid by the insurer
directly to the insured or beneficiary.@  Tex. Rev. Civ. Stat. art. 21.55, ' 1(3) (emphasis added).

The Dallas court of appeals
has held that article 21.55, section 6 does not apply to a claim for
reimbursement of defense costs in connection with the defense of a third party
claim.  TIG Ins. Co., 129 S.W.3d
at 242.  The court based its decision on
its construction of the plain language of the statute, including article 21.55
as a whole, holding that A[t]he entire
structure of article 21.55 presumes a tangible, measurable loss suffered by the
insured for which he seeks payment from the insurance company.  Any attempt to apply the statute=s structure to a claim for a defense is unworkable and, based on the
language of the statute, clearly unintended by the legislature.@  Id. at 239.













We find the reasoning of the
Dallas court persuasive[15]
and hold that article 21.55 does not apply to claims for reimbursement of defense
costs incurred in defending a third party claim.[16]  In doing so, we recognize that we are holding
contrary to DavalosCwhich was reversed on other groundsCand the decisions of several federal courts construing Texas law.[17]  But although we may rely on federal authority
as persuasive, we are not bound by it.  Davenport
v. Garcia, 834 S.W.2d 4, 20 (Tex. 1992) (orig. proceeding); Westchester
Fire Ins. Co. v. Admiral Ins. Co., 152 S.W.3d 172, 183 (Tex. App.CFort Worth 2004, pet. filed). 
Moreover, the federal courts holding contrary to TIG did not
analyze the issue with the same amount of detail as did the Dallas court of
appeals; instead, they rely on Davalos and the dictum in Gandy
without considering the persuasiveness of those authorities on the issue.  See, e.g., Rx.com, Inc., 364 F.Supp.2d
at 620; Housing Auth. of Dallas, Tex., 333 F.Supp.2d at 603. 








With respect to Gandy,
we are not bound by dictum unless it is judicial dictum, which is Aa statement by the supreme court made very deliberately after mature
consideration and for future guidance in the conduct of litigation [and which]
is >at least persuasive and should be followed unless found to be
erroneous.=@  Edwards v. Kaye, 9
S.W.3d 310, 314 (Tex. App.CHouston [14th Dist.] 1999, pet. denied) (quoting Palestine
Contractors, Inc. v. Perkins, 386 S.W.2d 764, 773 (Tex. 1964)).  In Gandy, the supreme court, in
discussing a hypothetical involving a coverage dispute in the context of a
third party claim, stated that the insured should be able to recover attorney=s fees against its insurer in a declaratory action to determine
whether coverage existed for the third party claim, citing both the former
version of section 38.001 and article 21.55, section 6.  Gandy, 925 S.W.2d at 714.  It also concluded that the insured may
be able to recover statutory interest under article 21.55, section 6.  Id. 
Although we consider this dictum to be persuasive for the proposition
that an insured is entitled to recover attorney=s fees in this instance, we are not convinced that this statement in Gandy
is persuasive for the proposition that an insured is entitled to attorney=s fees under article 21.55, section 6.[18]  Moreover, the supreme court has denied Dallas
Basketball=s petition
for review and has denied its motion for rehearing after the federal
decisions.  Although we may not infer
that the supreme court=s decision
was related to the merits, the fact remains that TIG is still valid and
has not been overturned.

For these reasons, we conclude
that the Association is not entitled to statutory interest and attorney=s fees under article 21.55.  We
overrule the Association=s third
cross-issue.

B.     Propriety of Attorney=s
Fees under Section 38.001 of the Civil Practice and Remedies Code

 

In its
second cross-issue, the Association claims that it was entitled to attorney=s fees under section 38.001 because its recovery under waiver and
estoppel theories is in effect a recovery under the terms of the insurance
policy, a contract.  We agree.








The issue of whether a party
is entitled to recover attorney=s fees is a question of law for a court to determine de novo.  Holland v. Wal‑Mart Stores, Inc.,
1 S.W.3d 91, 94-95 (Tex. 1999); Taylor Elec. Servs., Inc. v. Armstrong,
167 S.W.3d 522, 532 (Tex. App.CFort Worth 2005, no pet.); VingCard A.S. v. Merrimac Hospitality
Sys., Inc., 59 S.W.3d 847, 867 (Tex. App.CFort Worth 2001, pet. denied). 
Here, the trial court made conclusions of law on the attorney=s fees issue, which the Association challenges in its
cross-issue.  Conclusions of law may not
be challenged for factual sufficiency, but they may be reviewed to determine
their correctness based upon the facts.  Rogers v. City of Fort Worth, 89 S.W.3d
265, 277 (Tex. App.CFort Worth
2002, no pet.).

A party may recover
reasonable attorney=s fees in
addition to the amount of a valid claim and costs if the party=s claim is for breach of an oral or written contract.  Tex.
Civ. Prac. & Rem. Code Ann. ' 38.001(8).  A policyholder who
successfully sues an insurer for breach of contract suit is entitled to recover
attorney=s fees under section 38.001 unless the insurer is liable for attorney=s fees under another statute.  Grapevine
Excavation, Inc., 35 S.W.3d at 5.  








The Association alleged in
its complaint against Ulico that AUlico has waived, and is estopped to assert, any defenses it may have
had to paying the [Allen suit] Costs, and has waived and is estopped to assert
any right to rely on the Policy provisions to deny the [Association=s] insurance claim.@  The jury charge asked, AIs Ulico estopped from asserting that the [Association=s] claim for attorney=s fees and expenses incurred in defending the [Allen suit] is
not covered by the Policy?@ and AHas Ulico
waived its right to assert that the [Association=s] claim for attorney=s fees and expenses incurred in defending the [Allen suit] is
not covered by the Policy?@  The jury answered AYes@ to both
questions.  In determining that the
Association was not entitled to attorney=s fees, the trial court concluded the following:

1.  Ulico did not breach the Policy in question
in this case because the [Association] did not notify Ulico of the lawsuit
until after the Policy terminated (thereby failing to make a claim within the
policy period.)

2.  Ulico did not breach the Policy because the
Policy did not cover the [Association=s Allen suit] claim.

3.  Because Ulico did not breach the Policy, the
[Association] is not entitled to recover its attorney=s
fees in this case.

. . .
. 

7.  The jury=s findings of waiver and
estoppel, and the Judgment based upon the findings, do not support the
[Association=s]
claim for attorney=s
fees based upon a breach of the Policy. 
[Emphasis added.]

 








The Association claims that
the jury=s findings that Ulico was estopped from asserting, and waived its
right to assert, that the Association=s claim for attorney=s fees and expenses incurred in defending the Allen suit is Anot covered by the Policy@ shows that the claim was covered by the policy.  Ulico contends that the Association=s recovery was not under the policy because the trial court
vacated the jury=s findings
that Ulico agreed to grant the Association an extended reporting period under
the policy and by separate agreement; therefore, the Association did not
prevail on its breach of contract claim against Ulico.  According to Ulico, Awaiver and estoppel under the Wilkinson doctrine are not claims
for breach of an insurance policy.@

We disagree.  Under the Wilkinson exception, an
insurance company is estopped from asserting any defenses to the policy,
including the defense of noncoverage.  Tull,
146 S.W.2d at 694; State Farm Lloyds, 960 S.W.2d at 785; see also
Employers Cas. Co., 496 S.W.2d at 561 (AIts conduct being violative of the guiding principles and public
policy heretofore discussed, we hold that Employers is estopped as a matter of
law from denying the responsibilities under its policy for defense of
the Starky suit.@ (emphasis
added)).  By its terms, the Wilkinson
doctrine is an exception to the general rule that coverage cannot be created by
estoppel.  Tull, 146 S.W.2d at
694; State Farm Lloyds, 960 S.W.2d at 785; Wilkinson, 601 S.W.2d
at 521-22.  Thus, if the Wilkinson
exception applies, a finding of estoppel creates coverage under the policy
where none existed.  Consequently, the
jury=s finding here entitled the Association to recovery of its defense
costs in accordance with the terms of the policy.








Ulico relies on case law
holding that attorney=s fees may
not be awarded when there is no coverage under the policy.  See Evergreen Nat=l Indem. Co. v. Tan It All, Inc., 111
S.W.3d 669, 679 (Tex. App.CAustin 2003, no pet.).  But the Evergreen
case cited by Ulico is inapposite; it does not involve a finding that the
insurance company was estopped from asserting noncoverage defenses to a breach
of contract action on the policy.  See
id.; see also State Farm Lloyds, 960 S.W.2d at 784 n.3 (noting that
trial court awarded policyholder attorney=s fees in case in which liability based on Wilkinson exception).  Thus, we hold that the Association was
entitled to recover attorney=s fees from Ulico under section 38.001(8).  See Tex.
Civ. Prac. & Rem. Code Ann. ' 38.001(8);
Grapevine Excavation, Inc., 35 S.W.3d at
5.  

A trial court must award
attorney=s fees to the prevailing party in a suit founded on a written or oral
contract if there is evidence of the reasonableness of the fees.  See World Help v. Leisure
Lifestyles, Inc., 977 S.W.2d 662, 683 (Tex. App.CFort Worth 1998, pet. denied). 
A trial court has discretion in fixing the amount of attorney=s fees, but it has no discretion to entirely deny attorney=s fees established under section 38.001.  See Bocquet v. Herring, 972 S.W.2d 19,
20 (Tex. 1998); World Help, 977 S.W.2d at 683.








Because the Association=s recovery in this case was based on Ulico=s nonpayment of defense costs in accordance with the terms of the
insurance policy, we conclude that the trial court erred by failing to award the
Association its reasonable and necessary attorney=s fees under section 38.001(8). 
See Tex. Civ. Prac. &
Rem. Code Ann. ' 38.001(8); Grapevine
Excavation, Inc., 35 S.W.3d at 5.  We
sustain the Association=s second
cross-issue.

VII.  Conclusion

Having overruled Ulico=s two issues, we affirm the trial court=s judgment as to Ulico=s liability and the trial court=s damage award.  But, having
sustained the Association=s second
cross-issue, we reverse the trial court=s take-nothing judgment in Ulico=s favor as to the Association=s section 38.001(8) claim for attorney=s fees incurred in this declaratory judgment action.  Because the trial court has not yet exercised
its discretion with respect to the amount of attorney=s fees that the Association may recoverCbecause it determined that the Association was not entitled to any
attorney=s feesCwe remand
the attorney=s fees issue
to the trial court for a determination of the amount of attorney=s fees that the Association may recover from Ulico.  See City of Sherman v. Henry, 928
S.W.2d 464, 474 (Tex. 1996), cert. denied, 519 U.S. 1156 (1997); Nat=l Cas. Co. v. Lane Express, Inc., 998
S.W.2d 256, 266 (Tex. App.CDallas 1999, pet. denied).

 

TERRIE LIVINGSTON

JUSTICE

 

PANEL A:   LIVINGSTON, DAUPHINOT, and MCCOY, JJ.

 

DELIVERED:
December 15, 2005











[1]This
policy generally provided errors and omissions coverage for acts arising out of
the Association=s
activities as a union, including coverage for the breach of its duty of fair
representation. 





[2]The
Association did not renew the Ulico policy after the October 25, 1999
expiration date; instead, it purchased a new policy from Legion Insurance
Company. 





[3]In
contrast to an occurrence-based policy, a claims-made policy provides coverage
only for claims that come to the attention of the insured and that are
made known to the insurer during the policy period.  Pilgrim Enters. Inc. v. Md. Cas. Co.,
24 S.W.3d 488, 497 (Tex. App.CHouston [1st Dist.] 2000, no
pet.); Yancey v. Floyd West & Co., 755 S.W.2d 914, 918 (Tex. App.CFort
Worth 1988, writ denied).  





[4]Hoffman
had represented the Association since the inception of his law firm, and his
law firm was the Association=s Aoutside
general counsel.@ 





[5]The
supreme court has cited Wilkinson, but only in the context of explaining
that a court of appeals had adopted an exception to the general rule that
coverage cannot be created by waiver or estoppel.  McGuire, 744 S.W.2d at 603 n.1.  The court did not address the Wilkinson
exception in McGuire because it was not Aoutcome-determinative.@  Id.





[6]E.g.,
Katerndahl v. State Farm Fire & Cas. Co., 961 S.W.2d 518, 523
(Tex. App.CSan
Antonio 1997, no writ); State Farm Lloyds, Inc. v. Williams, 960 S.W.2d
781, 785-86 (Tex. App.CDallas
1997, pet. dism=d by
agr.); Paradigm Ins. Co. v. Tex. Richmond Corp., 942 S.W.2d 645, 652
(Tex. App.CHouston
[14th Dist.] 1997, writ denied) (op. on reh=g); Am. Eagle Ins. Co. v.
Nettleton, 932 S.W.2d 169, 173 (Tex. App.CEl
Paso 1996, writ denied); J.E.M. v. Fidelity & Cas. Co. of N.Y., 928
S.W.2d 668, 672 (Tex. App.CHouston [1st Dist.] 1996, no
writ); Rodriquez v. Tex. Farmers Ins. Co., 903 S.W.2d 499, 510 (Tex.
App.CAmarillo
1995, writ denied); State Farm Lloyds v. Williams, 791 S.W.2d 542, 551
(Tex. App.CDallas
1990, writ denied).





[7]See Penn.
Nat=l
Mut. Cas. Ins. Co. v. Kitty Hawk Airways, Inc., 964
F.2d 478, 481 (5th Cir. 1992); Nutmeg Ins. Co. v. Clear Lake City Water Auth.,
229 F.Supp.2d 668, 676-77 (S.D. Tex. 2002); see also Arkwright‑Boston
Mfrs. Mut. Ins. Co. v. Aries Marine Corp., 932 F.2d 442, 444-45 (5th
Cir.1991) (relying on federal authority for analyzing case under exception).





[8]See supra
page 11, notes 6 and 7.





[9]Penn
Nat=l
Mut. Ins. Co., 964 F.2d at 481.





[10]Ulico
did not object to this testimony.





[11]In
his May 2001 letter to Bowers, Hoffman estimated that the Association had a 50%
chance or better of prevailing in the Allen suit.  





[12]Bowers
testified that she discovered her mistake shortly after receiving Hoffman=s
bills.





[13]Even
assuming that Bowers=s
March 2000 letter validly reserved Ulico=s right to withdraw its
defense based on noncoverage due to late-reporting, her second, April 2001
letter omitted any reservation of rights language.  See Wilkinson, 601 S.W.2d at 522-23
(holding that letters dated same day, one extending unconditional coverage, and
the other reserving the right to contest coverage, created ambiguity; thus,
insurer was deemed to have extended unconditional coverage); cf. Katerndahl,
961 S.W.2d at 521 (AOnce
a defense is taken under a valid reservation of rights, the insurer may
withdraw the defense when it becomes clear that there is no coverage under
the applicable policy.@ (emphasis added)).  





[14]We
note that although the jury charge asked, without objection, AWhat
sum of money, if any, paid now in cash, would fairly and reasonably compensate
the [Association] for its reasonable defense costs in the [Allen suit]?,@ the
policy definition of defense costs does not equire that such costs be
reasonable.  





[15]The
San Antonio and Houston 14th courts of appeals have also agreed with the
reasoning of TIG and held that article 21.55 does not apply to third
party claims.  Serv. Lloyd=s
Ins. Co. v. J.C. Wink, Inc., No. 04-05-00038-CV, 2005 WL
2438350, at *10 (Tex. App.CSan Antonio Oct. 5, 2005,
pet. filed) (pertaining to insured=s request for defense of
third party claim); Lennar Corp. v. Great Am. Ins. Co., No.
14-02-00860-CV, 2005 WL 1324833, at *36 (Tex. App.CHouston
[14th Dist.] June 2, 2005, no pet. h.) (pertaining to insured=s
request for indemnification of third party claim).





[16]Although
TIG involved an insured=s attempt to require its
insurer to provide it a defense in a third party action after the insurer=s
refusal to defend, rather than an attempt to recoup defense costs covered under
the policy that the insurer has refused to pay, the same analysis of the
statute applies.  TIG Ins. Co.,
129 S.W.3d at 240 (A[T]o
the extent the insured pays for his own defense and seeks to be reimbursed for
these payments, his claim for reimbursement is not a claim under the policy but
rather a common law claim for damages.@).





[17]See
Davalos, 84 S.W.3d at 318-19.  TIG
described the Davalos decision as follows:

 

In Davalos,
the court assumes without discussion that article 21.55 applies to an insured=s
claim for a defense.  See Davalos,
84 S.W.3d at 318‑19.   The court
then goes on to affirm the trial court=s award of damages based on
this assumption.  Absent any reasoning to
support the application of 21.55, Davalos is not persuasive.

 

TIG Ins. Co., 129
S.W.3d at 241.

 





[18]Based
on subsequent supreme court authority, an insured would not be entitled to
recover attorney=s
fees under both of these statutes.  See
Grapevine Excavation, Inc. v. M.D. Lloyds, 35 S.W.3d 1, 5 (Tex.
2000) (holding that insured is entitled to recovery of attorney=s
fees under section 38.001(8) of civil practice and remedies code in breach of
contract case based on insurance policy only if insured is not entitled to
recover attorney=s
fees under any other statute).